**Schlomo Daniel TOREN, Plaintiff,**

v.

**Rachael Elisabeth TOREN, Defendant.**

**No. 98–11302–GAO.**

United States District Court,
D. Massachusetts.

Oct. 21, 1998.

---

241

Gerald L. Nissenbaum, Nissenbaum Law Offices, Boston, MA, for Schlomo Daniel Toren.

Scott P. Lewis, Jordana Glasgow, Palmer & Dodge, Boston, MA, Charles J. Bowser, Jr., W. Sanford Durland, III, Lee, Levine & Bowser LLP, Boston, MA, for Rachael Elisabeth Toren.

## MEMORANDUM AND ORDER

O'TOOLE, District Judge.

Invoking the Court's jurisdiction under the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601–10, the plaintiff Schlomo Daniel Toren (the "Father") seeks an order from this Court requiring his former wife, the defendant Rachael Elisabeth Toren (the "Mother"), to return the parties' two minor children from Massachusetts, where she and the children presently reside, to Israel, where he resides. ICARA implements the terms of the 1980 Hague Convention on the Civil Aspects of International Child Abduction (the "Convention"), to which both the United States and Israel are signatory States. Because the Court concludes that the children were not "habitual residents" of Israel at the time of their allegedly wrongful retention in the United States by the Mother, neither the Convention nor ICARA applies. The Father's motion is therefore denied, and the action is dismissed.

## BACKGROUND

The record presented by the parties establishes the following facts. The parties were married in Israel on August 22, 1988. Two children were born of their marriage: D'Vora, now eight years old, and Yael, now five. In December, 1994 the parties were divorced by a judgment of the Rabbinical District Court in Jerusalem. The divorce judgment incorporated the terms of the parties' separation agreement, which provided for joint legal custody of the children. The parties agreed, and the judgment ordered, that the children would reside in Israel for at least two years after the divorce. In 1996, the parties executed an amendment to their separation agreement that provided, among other things, that the children would live with the Mother in Massachusetts for a period of years, but not beyond July 21, 2000. The amended agreement further provided that the children would not stay in the United States or any other place outside of Israel after that date, and that they would study in Israel during the 2000–2001 school year. The amended agreement also specified the Father's visitation rights.

On July 1, 1997, the Mother filed a complaint in the Massachusetts Probate and Family Court seeking to modify the parties' agreement (and the Israeli judgment) by eliminating the requirement that the children eventually return to Israel and instead allowing them to remain indefinitely in the United States. The Probate Court granted the Mother temporary legal and physical custody of the children. The Father has appeared in that action, and it remains pending. On July 6, 1998, the plaintiff filed the present complaint, seeking an order requiring the immediate return of D'Vora and Yael to Israel. He alleges that since July 8, 1997, the defendant has interfered with his rights of access to the children in violation of the orders of the Israeli court and the parties' own agreements and that this interference amounts to a "wrongful retention" of the children within the meaning of Article 3 of the Convention, entitling him to relief.

## ANALYSIS

■ In brief, the Convention "is designed to restore the 'factual' status quo which is unilaterally altered when a parent abducts a child and aims to protect the legal custody rights of the non-abducting parent." *Feder v. Evans–Feder*, 63 F.3d 217, 221 (3d Cir. 1995). For purposes of the Convention, an abduction may occur either by a physical removal of a child from one country to another, or by a refusal to return a child who is temporarily away from its home. The latter circumstance, referred to as a "retention" of the child away from its residence, is what the plaintiff asserts occurred in this case. Under Article 3 of the Convention, the retention of a child is wrongful if it is in breach of the rights of custody attributable to a person under the law of the state in which the child was an "habitual resident" immediately before the removal or retention, and if the person was exercising (or attempting to exercise) those custody rights at the time of the retention. Hague Convention, Art. 3; *see Wanninger v. Wanninger*, 850 F.Supp. 78, 80–81 (D.Mass.1994).

To demonstrate that the defendant's attempted retention of the children in the United States is wrongful, the plaintiff must first

show that the Mother is retaining the children away from their "habitual residence" in Israel, where the Father was exercising his legally conferred custodial rights. *See Zuker v. Andrews*, 2 F.Supp.2d 134, 136 (D.Mass. 1998). *See also Mozes v. Mozes*, 19 F.Supp.2d 1108, 1112–13, 1998 WL 514152, at *4 (C.D.Cal.1998). Accordingly, the first critical determination upon which the plaintiff's claim for relief depends is whether the children's "habitual residence" was in Israel at the time of the Mother's allegedly wrongful retention of them in Massachusetts. "[I]f the United States is the children's habitual residence, then they have not been wrongfully retained here and the protections of the Convention cannot be invoked. On the other hand, if Israel is the habitual residence of the children, then they may have been wrongfully removed, and the Court must continue its inquiry." *Mozes*, 19 F.Supp.2d 1108, 1112–13, 1998 WL 514152, at *4. The plaintiff bears the burden of proof as to this issue. 42 U.S.C. § 11603(e)(1)(A).

■ The Convention does not define "habitual residence." The courts that have considered the matter in the last few years have determined a child's habitual residence on the basis of the peculiar facts and circumstances of the case at hand. *See Zuker*, 2 F.Supp.2d at 137–38 (reviewing cases). Nevertheless, a consensus has emerged on some general principles. "Habitual residence" is not a technical term, like "domicile," *Friedrich v. Friedrich*, 983 F.2d 1396, 1401 (6th Cir.1993), and it should be understood as the child's "ordinary residence" at the relevant time. *Rydder v. Rydder*, 49 F.3d 369, 373 (8th Cir.1995). Moreover, in determining a child's habitual residence, "the court must focus on the child, not the parents, and examine past experience, not future intentions." *Friedrich*, 983 F.2d at 1401. An English court, frequently cited in American decisions, has said that for a particular place of residence to be considered habitual, "[t]here must be a degree of settled purpose.... All that is necessary is that the purpose of living where one does has a sufficient degree of continuity to be properly described as settled." *In re Bates*, No. CA 122–89, High Court of Justice, Family Div'l Ct., slip op. at 10, Royal Courts of Justice, United Kingdom

(1989). Whether a child's residence has become thus "settled" depends on "an analysis of the child's circumstances in that place and the parents' present, shared intentions regarding their child's presence there." *Feder*, 63 F.3d at 224.

■ Applying these considerations to this case, it is clear from the record before the Court that the children's habitual residence was in the United States at the time of the alleged wrongful retention. The children had been taken to this country in 1996 by the Mother in accordance with the parties' agreement. It was the expectation of both parents that the children would live in the United States for as long as four years. At the time the Mother filed her complaint in the Probate and Family Court to modify the custody arrangements, which is when the plaintiff contends the wrongful retention commenced, the children had been living here for approximately a year. During that time, they formed significant relationships here with other family members and with their peers. They also became "settled" in their community and its institutions, such as their school and synagogue. Both have apparently ongoing therapeutic relationships with medical professionals in the Boston area.

It does not matter that the United States was not intended to be the children's permanent residence, nor that it was intended when they came here that they were to return to Israel in 2000. What may happen in the future ordinarily has little, if any, relevance to whether the children *have become* so "settled" in their place of residence that it may fairly be described, in the present but by reference to the past, as their "habitual" residence. "The court must look back in time, not forward." *Friedrich*, 983 F.2d at 1401.

Because the children's habitual residence at the relevant time was in the United States, not Israel, the Father's claim of wrongful retention must fail. The protections of the Convention cannot be invoked; the plaintiff is not entitled to an order that the children be returned to Israel. *See Mozes*, 19 F.Supp.2d 1108, 1116, 1998 WL 514152, at *8.

■ There is an alternate route to the same conclusion. Under Article 12 of the

Convention, a child is not to be ordered returned if more than one year passed between the wrongful retention and the commencement of proceedings seeking return and the child "is now settled in its new environment." Those conditions are met here. The Mother acted to "retain" the children by filing the Probate Court action and obtaining an *ex parte* order granting temporary custody on July 1, 1997. This action was filed July 8, 1998, more than one year later. The plaintiff's argument that the date he learned of the Probate Court filing should be considered the date of the retention is unpersuasive. The language of the Convention is unambiguous, measuring the one-year period from the "date of the wrongful ... retention." Hague Convention, Art. 12. It might have provided that the period should be measured from the date the offended-against party learned or had notice of the wrongful retention, but it does not. That is not surprising, since the evident import of the provision is not so much to provide a potential plaintiff with a reasonable time to assert any claims, as a statute of limitation does, but rather to put some limit on the uprooting of a settled child. Thus, even in the unlikely event that the potential plaintiff had no notice of the wrongful retention until after a year had expired, it is the Convention's prescription that the child who is settled in a new environment ought not to be ordered returned under the Convention's auspices. Here, for the same reasons that the children are "settled" so that their "habitual residence" is Massachusetts, they are settled within the limitation on return imposed by Article 12.

### CONCLUSION

For the reasons set forth above, the plaintiff's Motion for Preliminary Restraining Orders and Mandatory Orders is DENIED. In addition, because the protections of the Hague Convention cannot be invoked in these circumstances, the action is DISMISSED with prejudice.

IT IS SO ORDERED.