Shlomo Daniel TOREN, Plaintiff, Appellant,

v.

Rachael Elisabeth TOREN, Defendant, Appellee.

No. 98–2332.

United States Court of Appeals, First Circuit.

Heard June 9, 1999.

Decided Sept. 8, 1999.

Gerald L. Nissenbaum for appellant.

Scott P. Lewis, with whom Jordana B. Glasgow, and Palmer & Dodge LLP were on brief, for appellee.

Before TORRUELLA, Chief Judge, NOONAN * and LYNCH, Circuit Judges.

TORRUELLA, Chief Judge.

In the underlying action filed against defendant-appellee Rachael Elisabeth Toren ("the mother"), plaintiff-appellant Shlomo Daniel Toren ("the father") petitioned the district court for an order requiring the immediate return of his two minor children from the mother's residence in Massachusetts to the father's residence in Israel. The father's action was brought pursuant to the 1980 Hague Convention on the Civil Aspects of International Child Abduction ("the Hague Convention"), incorporated into United States law by the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601–11610. The district court denied the father's petition, and this appeal followed.

* Of the Ninth Circuit, sitting by designation.

## BACKGROUND

Rachael and Shlomo Toren were married in Israel on August 22, 1988. Two children were born of this marriage: Dvora, now nine years old, and Yael, now six. In December 1994, the couple was divorced by a judgment of the Rabbinical District Court in Jerusalem. The divorce judgment incorporated the terms of the parties' separation agreement, which provided for joint legal custody of the children. The agreement also provided that the children would continue to reside in Israel for at least two years after the divorce.

The parties subsequently amended their separation agreement via a written agreement dated May 20, 1996. This agreement was also approved by the Jerusalem District Court. The amended agreement provides that the children will live with their mother in Massachusetts for a period of years, but not beyond July 21, 2000. The agreement further provides that the children will not stay in the United States or any other place outside of Israel after that date, and that they will study in Israel during the 2000–2001 school year.

The amended agreement also altered the father's visitation rights. Specifically, the agreement entitles the father to have the children stay with him every summer, for a period of up to sixty-five days. According to the agreement, the mother is solely responsible for all of the children's travel expenses to and from Israel for these summer visits. The agreement also entitles the father to have the children visit him in Israel during their school vacations at Thanksgiving, at the end of the secular year, and in the spring. In addition, if the father travels to the United States, the agreement entitles him to visit with the children, provided he gives advance notice to the mother. Finally, the agreement clearly states that "the visitation according to this agreement is subject

to change by agreement of the sides," and that "sole jurisdiction over matters connected with this agreement is with the District Court in Jerusalem or in the Family Court, whatever applies."

In July 1996, the mother and the children moved to Massachusetts. On July 1,. 1997, just prior to the father's scheduled visit with the children in Massachusetts, the mother filed a "Verified Complaint for Custody" in the Massachusetts Probate and Family Court, seeking to modify the terms of the divorce judgment issued by the District Court of Jerusalem. As grounds for modification, the mother stated that "[t]he terms of the parties' divorce agreement, and subsequent modification agreement ... are no longer in the children's best interests." Specifically, the mother requested: (1) that the parties' divorce agreement and subsequent modification agreement be registered in the Massachusetts Probate and Family Court; (2) that the terms of visitation as set forth in the parties' divorce agreement and subsequent modification be further modified by the Massachusetts Probate and Family Court in a manner consistent with the children's best interests; and (3) "such other relief as [the court] deems appropriate."

On July 1, 1997, after a hearing ex parte, the probate court granted the mother temporary sole physical and legal custody of the children, and temporarily suspended the father's rights to visitation and access to the children. The probate court scheduled further hearings on these issues for July 10.

On July 10, 1997, the probate court issued a "Further Temporary Order" ordering that the mother continue to have sole legal and physical custody of the children, subject to the mother being required to submit any and all significant issues relative to the children's medical care and education to a guardian ad litem or mediator. The order further stated that "[n]either party shall remove the children from the Commonwealth of Massachusetts without the written permission of the other party or of the Court." On the same day, both parties also stipulated to a visitation schedule.

On October 21, 1997, the mother amended her complaint, making substantially the same allegations but also seeking: (1) modification of support orders of the Israeli courts, including those relating to the cost of visitation; and (2) that "any related custody provisions and orders (including the requirement for joint legal custody) ... be modified by the Probate and Family Court of the Commonwealth of Massachusetts in a manner consistent with the children's best interests." The mother also reiterated her request "[t]hat this Court grant such other relief as it deems appropriate."

On July 6, 1998, the father filed this action in the United States District Court for the District of Massachusetts, alleging that the mother's actions have amounted to a "wrongful retention" of the children within the meaning of Article 3 of the Hague Convention.[1] In his complaint, the father requested, *inter alia*, an order requiring the immediate return of his children from Massachusetts to Israel.[2] The

---

1. Article 3 of the Hague Convention provides in relevant part that:

   The removal or the retention of a child is to be considered wrongful where—

   *a* it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

   *b* at the time of removal or retention those rights were actually exercised, either joint-

ly or alone, or would have been so exercised but for the removal or retention.

2. Article 12 of the Hague Convention provides:

   Where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful

mother denied that there had been any retention (or removal) or any wrongful retention (or removal).

The district court rejected the father's request for the immediate return of the children, basing its decision on two grounds. First, the district court found that the children were "habitual residents" of the United States—and not Israel—at the time of any allegedly wrongful retention by the mother. *See Toren v. Toren,* 26 F.Supp.2d 240, 243 (D.Mass.1998). The court then concluded that because the mother was not retaining the children away from their "habitual residence," there was no "wrongful retention" within the meaning of Article 3, *see supra* note 1, and thus the protections of the Hague Convention could not be invoked. *See Toren,* 26 F.Supp.2d at 243. Second, the district court determined that the father had failed to bring his action within one year of the allegedly wrongful retention, and thus Article 12 of the Hague Convention, *see supra* note 2, barred his action. *See Toren,* 26 F.Supp.2d at 244. Accordingly, the district court denied the father's petition, and dismissed the father's action with prejudice. This appeal followed.

## DISCUSSION

We agree with the district court that the father's petition for an order requiring that the children be returned to Israel should have been dismissed. However, we disagree with respect to the proper grounds for dismissal. We conclude that the district court jumped the gun by ad-

dressing the issue of the children's habitual residence prior to making the threshold determination as to whether there had been any retention of the children at all within the meaning of the Hague Convention.

■ Neither the Hague Convention nor ICARA defines the terms "retention" or "removal." However, the language and structure of Article 3 of the Hague Convention clearly indicate that there must be an initial determination as to whether there has been a removal or retention before any inquiry can be made into whether such removal or retention was wrongful.[3] We conclude that the father has failed to allege facts sufficient to set forth a claim that the Toren children have been removed or retained within the meaning of the Hague Convention. Absent such a showing, the district court should not have exercised jurisdiction over the father's claim.

■ We turn to the father's allegations of "wrongful retention" in pursuit of the question of whether there was any retention or removal, which must be addressed before the issue of wrongfulness is addressed. In his complaint, the father seemingly concedes the fact that no retention has yet occurred when he refers to the mother's "*intention* to wrongfully retain the children in the USA." (emphasis added).[4] As evidence of this intention, the father points to the allegations contained in the mother's "Verified Complaint for

removal or retention, the authority concerned shall order the return of the child forthwith.

The judicial or administrative authority, even where the proceedings have been commenced after the expiration of the period of one year referred to in the preceding paragraph, shall also order the return of the child, unless it is demonstrated that the child is now settled in its new environment.

**3.** Article 3 reads: "The removal or the retention of a child is to be considered wrongful where...." The structure of this Article clearly establishes the proper order of inqui-

ry: first, the court should inquire into whether there has been any removal or retention at all; and second, the court should inquire into whether such removal or retention has been wrongful.

**4.** Later in the complaint, the father states: "When the MOTHER and children departed from Israel, the FATHER had no idea that the MOTHER was *thinking about* not permitting the children to be available to the FATHER or *thinking about* not returning the children to Israel in full accordance with the parties' agreement." (emphasis added).

Custody." Specifically, the father points to paragraph 23 of the mother's complaint which states only that "[n]ow that the children are living in the Commonwealth of Massachusetts, their quality of life has improved and there are better opportunities for them (including medical care)." This allegation was made, however, in a complaint seeking only modification of the parties' visitation agreement. We fail to see how this allegation reveals anything about the mother's intention to retain the children in Massachusetts after July 21, 2000. Up until that date, the children's mere presence in the United States cannot constitute a retention because it is entirely consistent with the parties' May 20 agreement. In addition, while it is conceivable that the Massachusetts court could deny the father any visitation with his children, and that this denial of access could amount to a retention, the fact remains that this turn of events has not yet occurred. Until that happens, we fail to see how a mere request for modification of the terms of visitation can, in and of itself, amount to a retention of children.

The father next points to the mother's "Verified Amended Complaint for Custody" in which she requests that "this Court grant such other relief as it deems appropriate." The father contends that such request is, in essence, a request that the court vacate the requirements that the children be returned to Israel on July 21, 2000 and that they visit the father in Israel. However, nowhere in her amended complaint does the mother make any reference to her post-July 21, 2000 plans. We refuse to infer any intention of retention from a general request for "such other relief."

■ The father's next argument is that the mere fact of the mother's filing of a complaint for custody in the Massachusetts Probate and Family Court amounts to a wrongful retention. In making this argument, it is unclear whether the father is contending that the mere fact of filing amounts to a wrongful retention because it further evidences the mother's intent to retain the children after July 21, 2000, or whether the fact of filing amounts to a wrongful retention because it is in violation of the parties' agreement that "sole jurisdiction over matters connected with [the parties' May 20 agreement] is with the District Court in Jerusalem or in the Family Court, whatever applies." As to the former argument, we reiterate that the mother's complaint makes no reference to her post July 21, 2000 plans with respect to the return of her children to Israel. With respect to the latter argument, while the mother's filing of a complaint for custody in a Massachusetts court may violate the terms of the May 20 agreement, it is in no way linked to the retention of children.[5]

■ Even if the father had alleged facts sufficient to support his claim that the mother intended to retain the children in the United States after July 21, 2000, we do not believe that the Hague Convention or ICARA would enable us to exercise jurisdiction over such a claim. To the extent that the father's argument is based on the mother's future intent, the father is seeking a judicial remedy for an anticipatory violation of the Hague Convention. But the Hague Convention only provides a cause of action to petitioners who can establish actual retention. *See supra* note 1. Therefore, we do not see how a petitioner like the father, alleging only an anticipatory retention, can invoke the protections of the Hague Convention.

■ In addition to his anticipatory retention argument, the father articulates a denial of access argument. This argument is to the effect that the mother's conduct has so interfered with his rights of access to the children as to amount to a wrongful

---

5. It is possible that the filing of the mother's complaint does in fact violate the terms of the parties' May 20 agreement. However, because this violation has no bearing on the question of retention, the appropriate forum for this argument is the Massachusetts Probate Court, and not this court.

retention within the meaning of the Hague Convention.[6] Specifically, the father points to the Further Temporary Order issued by the Massachusetts Probate Court, requiring both parties to obtain written permission from the court before removing the children from the Commonwealth. The father contends that such requirement is in direct violation of the terms of the parties' May 20 agreement. Again, it is unclear precisely which provisions of the May 20 agreement the father claims have been violated. To the extent that the father's argument refers to the jurisdictional provisions of the Israeli decree, we reiterate that the appropriate forum for such an argument is the Massachusetts Probate and Family Court. Such an argument has no bearing on the question before us, namely, whether a retention of children has in fact occurred. To the extent that the father is arguing that the order is violative of the visitation terms set forth in the May 20 agreement, we note that the order does not deny visitation rights. In other words, while the Further Temporary Order clearly imposes an additional requirement before the father can exercise his visitation rights, the requirement, on its face, does not amount to a denial of access sufficient to support a claim of a retention.

At oral argument, the father also articulated—for the first time—a theory of de facto denial of access. The father argued that because he is a low-income employee, he cannot afford to travel to the United States to visit with his children. This argument cannot prevail for two reasons. First, it is undisputed that both parties agreed that the children would move to the United States and reside there with the mother until no later than July 21, 2000. The father cannot now complain that the terms of the May 20 agreement amount to a retention. Secondly, the father never presented this argument to the district court. It is a well-settled principle

in this circuit that "a party ... may not raise on appeal issues that were not seasonably advanced (and, hence, preserved) below." *See Daigle v. Maine Med. Ctr., Inc.*, 14 F.3d 684, 687 (1st Cir.1994).

Finally, we address the father's argument that the July 10, 1997 visitation agreement itself, stipulated to by both parties, constitutes a denial of access amounting to a wrongful retention. First, we note that the parties' May 20 agreement specifically provides that "[t]he visitation according to this agreement is subject to change by agreement of the sides." As previously noted, the July 10 visitation agreement of which the father now complains, was stipulated to by both sides. More importantly, the July 10 visitation agreement clearly provides the father with access to his children. Although it may not provide the father with visitation on the precise terms that he desires, we cannot conclude that this stipulated agreement amounts to a retention of the children. Again, the father may choose to voice both his jurisdictional and substantive objections to the stipulated visitation agreement in the pending state court proceedings.

In conclusion, neither the mother nor any court has denied the father access to his children. Although the mother has filed a complaint in the Massachusetts Probate and Family Court seeking to modify the parties' agreement with respect to custody, visitation, and financial support, the father continues to possess and exercise albeit limited rights of access to his children. We recognize that the father may have valid legal arguments as to why the Massachusetts court should not exercise jurisdiction over the mother's claims. However, we conclude that the state court—and not this court—is the proper forum for those arguments.

We conclude that the father has failed to allege facts sufficient to state a claim for

---

**6.** The complaint states: "Since July 8, 1997, the MOTHER, individually, and as a direct result of her conduct, has interfered with the FATHER'S rights of access to the children."

**30**

retention or removal, let alone "wrongful" retention or removal. For this reason, the district court erred in proceeding directly to an inquiry into "wrongfulness." Absent a threshold showing that there has been a retention or removal, the district court lacked jurisdiction to grant or deny the father's petition. We therefore vacate the district court opinion and dismiss for lack of jurisdiction.

### CONCLUSION

Based on the foregoing, we **vacate** the district court's opinion and **dismiss** for lack of jurisdiction.