USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit
 ____________________

No. 98-2332

 SHLOMO DANIEL TOREN,

 Plaintiff, Appellant,

 v.

 RACHAEL ELISABETH TOREN,

 Defendant, Appellee.

 ____________________

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. George A. O'Toole, Jr., U.S. District Judge]

 ____________________

 Before

 Torruella, Chief Judge,

 Noonan and Lynch, Circuit Judges.

 _____________________

 Gerald L. Nissenbaum for appellant.
 Scott P. Lewis, with whom Jordana B. Glasgow, and Palmer &
Dodge LLP were on brief, for appellee.

 ____________________

 September 8, 1999
 ____________________ TORRUELLA, Chief Judge. In the underlying action filed
against defendant-appellee Rachael Elisabeth Toren ("the mother"),
plaintiff-appellant Shlomo Daniel Toren ("the father") petitioned
the district court for an order requiring the immediate return of
his two minor children from the mother's residence in Massachusetts
to the father's residence in Israel. The father's action was
brought pursuant to the 1980 Hague Convention on the Civil Aspects
of International Child Abduction ("the Hague Convention"),
incorporated into United States law by the International Child
Abduction Remedies Act ("ICARA"), 42 U.S.C. 11601-11610. The
district court denied the father's petition, and this appeal
followed.
 BACKGROUND
 Rachael and Shlomo Toren were married in Israel on
August 22, 1988. Two children were born of this marriage: Dvora,
now nine years old, and Yael, now six. In December 1994, the
couple was divorced by a judgment of the Rabbinical District Court
in Jerusalem. The divorce judgment incorporated the terms of the
parties' separation agreement, which provided for joint legal
custody of the children. The agreement also provided that the
children would continue to reside in Israel for at least two years
after the divorce.
 The parties subsequently amended their separation
agreement via a written agreement dated May 20, 1996. This
agreement was also approved by the Jerusalem District Court. The
amended agreement provides that the children will live with their
mother in Massachusetts for a period of years, but not beyond
July 21, 2000. The agreement further provides that the children
will not stay in the United States or any other place outside of
Israel after that date, and that they will study in Israel during
the 2000-2001 school year.
 The amended agreement also altered the father's
visitation rights. Specifically, the agreement entitles the father 
to have the children stay with him every summer, for a period of up
to sixty-five days. According to the agreement, the mother is
solely responsible for all of the children's travel expenses to and
from Israel for these summer visits. The agreement also entitles
the father to have the children visit him in Israel during their
school vacations at Thanksgiving, at the end of the secular year,
and in the spring. In addition, if the father travels to the
United States, the agreement entitles him to visit with the
children, provided he gives advance notice to the mother. Finally,
the agreement clearly states that "the visitation according to this
agreement is subject to change by agreement of the sides," and that 
"sole jurisdiction over matters connected with this agreement is
with the District Court in Jerusalem or in the Family Court,
whatever applies." 
 In July 1996, the mother and the children moved to
Massachusetts. On July 1, 1997, just prior to the father's
scheduled visit with the children in Massachusetts, the mother
filed a "Verified Complaint for Custody" in the Massachusetts
Probate and Family Court, seeking to modify the terms of the
divorce judgment issued by the District Court of Jerusalem. As
grounds for modification, the mother stated that "[t]he terms of
the parties' divorce agreement, and subsequent modification
agreement . . . are no longer in the children's best interests." 
Specifically, the mother requested: (1) that the parties' divorce
agreement and subsequent modification agreement be registered in
the Massachusetts Probate and Family Court; (2) that the terms of
visitation as set forth in the parties' divorce agreement and
subsequent modification be further modified by the Massachusetts
Probate and Family Court in a manner consistent with the children's
best interests; and (3) "such other relief as [the court] deems
appropriate."
 On July 1, 1997, after a hearing ex parte, the probate
court granted the mother temporary sole physical and legal custody 
of the children, and temporarily suspended the father's rights to
visitation and access to the children. The probate court scheduled
further hearings on these issues for July 10.
 On July 10, 1997, the probate court issued a "Further
Temporary Order" ordering that the mother continue to have sole
legal and physical custody of the children, subject to the mother
being required to submit any and all significant issues relative to
the children's medical care and education to a guardian ad litem or
mediator. The order further stated that "[n]either party shall
remove the children from the Commonwealth of Massachusetts without
the written permission of the other party or of the Court." On the
same day, both parties also stipulated to a visitation schedule.
 On October 21, 1997, the mother amended her complaint,
making substantially the same allegations but also seeking: (1)
modification of support orders of the Israeli courts, including
those relating to the cost of visitation; and (2) that "any related 
custody provisions and orders (including the requirement for joint
legal custody) . . . be modified by the Probate and Family Court of
the Commonwealth of Massachusetts in a manner consistent with the
children's best interests." The mother also reiterated her request
"[t]hat this Court grant such other relief as it deems
appropriate."
 On July 6, 1998, the father filed this action in the
United States District Court for the District of Massachusetts,
alleging that the mother's actions have amounted to a "wrongful
retention" of the children within the meaning of Article 3 of the 
Hague Convention. In his complaint, the father requested, inter
alia, an order requiring the immediate return of his children from
Massachusetts to Israel. The mother denied that there had been
any retention (or removal) or any wrongful retention (or removal).
 The district court rejected the father's request for the
immediate return of the children, basing its decision on two
grounds. First, the district court found that the children were
"habitual residents" of the United States -- and not Israel -- at
the time of any allegedly wrongful retention by the mother. See
Toren v. Toren, 26 F. Supp. 2d 240, 243 (D. Mass. 1998). The court
then concluded that because the mother was not retaining the
children away from their "habitual residence," there was no
"wrongful retention" within the meaning of Article 3, see supra
note 1, and thus the protections of the Hague Convention could not
be invoked. See Toren, 26 F. Supp. 2d at 243. Second, the
district court determined that the father had failed to bring his
action within one year of the allegedly wrongful retention, and
thus Article 12 of the Hague Convention, see supra note 2, barred
his action. See Toren, 26 F. Supp. 2d at 244. Accordingly, the
district court denied the father's petition, and dismissed the
father's action with prejudice. This appeal followed.
 DISCUSSION
 We agree with the district court that the father's
petition for an order requiring that the children be returned to
Israel should have been dismissed. However, we disagree with
respect to the proper grounds for dismissal. We conclude that the
district court jumped the gun by addressing the issue of the
children's habitual residence prior to making the threshold
determination as to whether there had been any retention of the
children at all within the meaning of the Hague Convention. 
 Neither the Hague Convention nor ICARA defines the terms
"retention" or "removal." However, the language and structure of
Article 3 of the Hague Convention clearly indicate that there must
be an initial determination as to whether there has been a removal
or retention before any inquiry can be made into whether such
removal or retention was wrongful. We conclude that the father
has failed to allege facts sufficient to set forth a claim that the
Toren children have been removed or retained within the meaning of
the Hague Convention. Absent such a showing, the district court
should not have exercised jurisdiction over the father's claim.
 
 We turn to the father's allegations of "wrongful
retention" in pursuit of the question of whether there was any
retention or removal, which must be addressed before the issue of
wrongfulness is addressed. In his complaint, the father seemingly
concedes the fact that no retention has yet occurred when he refers
to the mother's "intention to wrongfully retain the children in the
USA." (emphasis added). As evidence of this intention, the
father points to the allegations contained in the mother's
"Verified Complaint for Custody." Specifically, the father points
to paragraph 23 of the mother's complaint which states only that
"[n]ow that the children are living in the Commonwealth of
Massachusetts, their quality of life has improved and there are
better opportunities for them (including medical care)." This
allegation was made, however, in a complaint seeking only
modification of the parties' visitation agreement. We fail to see
how this allegation reveals anything about the mother's intention
to retain the children in Massachusetts after July 21, 2000. Up
until that date, the children's mere presence in the United States
cannot constitute a retention because it is entirely consistent
with the parties' May 20 agreement. In addition, while it is
conceivable that the Massachusetts court could deny the father any
visitation with his children, and that this denial of access could
amount to a retention, the fact remains that this turn of events
has not yet occurred. Until that happens, we fail to see how a
mere request for modification of the terms of visitation can, in
and of itself, amount to a retention of children.
 The father next points to the mother's "Verified Amended
Complaint for Custody" in which she requests that "this Court grant
such other relief as it deems appropriate." The father contends
that such request is, in essence, a request that the court vacate
the requirements that the children be returned to Israel on
July 21, 2000 and that they visit the father in Israel. However,
nowhere in her amended complaint does the mother make any 
reference to her post-July 21, 2000 plans. We refuse to infer any
intention of retention from a general request for "such other
relief."
 The father's next argument is that the mere fact of the
mother's filing of a complaint for custody in the Massachusetts
Probate and Family Court amounts to a wrongful retention. In
making this argument, it is unclear whether the father is
contending that the mere fact of filing amounts to a wrongful
retention because it further evidences the mother's intent to
retain the children after July 21, 2000, or whether the fact of
filing amounts to a wrongful retention because it is in violation
of the parties' agreement that "sole jurisdiction over matters
connected with [the parties' May 20 agreement] is with the District
Court in Jerusalem or in the Family Court, whatever applies." As
to the former argument, we reiterate that the mother's complaint
makes no reference to her post July 21, 2000 plans with respect to
the return of her children to Israel. With respect to the latter
argument, while the mother's filing of a complaint for custody in
a Massachusetts court may violate the terms of the May 20
agreement, it is in no way linked to the retention of children.
 Even if the father had alleged facts sufficient to
support his claim that the mother intended to retain the children
in the United States after July 21, 2000, we do not believe that
the Hague Convention or ICARA would enable us to exercise
jurisdiction over such a claim. To the extent that the father's
argument is based on the mother's future intent, the father is
seeking a judicial remedy for an anticipatory violation of the
Hague Convention. But the Hague Convention only provides a cause
of action to petitioners who can establish actual retention. See 
supra note 1. Therefore, we do not see how a petitioner like the
father, alleging only an anticipatory retention, can invoke the
protections of the Hague Convention. 
 In addition to his anticipatory retention argument, the
father articulates a denial of access argument. This argument is
to the effect that the mother's conduct has so interfered with his
rights of access to the children as to amount to a wrongful
retention within the meaning of the Hague Convention. 
Specifically, the father points to the Further Temporary Order
issued by the Massachusetts Probate Court, requiring both parties
to obtain written permission from the court before removing the
children from the Commonwealth. The father contends that such
requirement is in direct violation of the terms of the parties'
May 20 agreement. Again, it is unclear precisely which provisions
of the May 20 agreement the father claims have been violated. To
the extent that the father's argument refers to the jurisdictional
provisions of the Israeli decree, we reiterate that the appropriate
forum for such an argument is the Massachusetts Probate and Family
Court. Such an argument has no bearing on the question before us,
namely, whether a retention of children has in fact occurred. To
the extent that the father is arguing that the order is violative
of the visitation terms set forth in the May 20 agreement, we note
that the order does not deny visitation rights. In other words,
while the Further Temporary Order clearly imposes an additional
requirement before the father can exercise his visitation rights,
the requirement, on its face, does not amount to a denial of access
sufficient to support a claim of a retention.
 At oral argument, the father also articulated -- for the
first time -- a theory of de facto denial of access. The father
argued that because he is a low-income employee, he cannot afford
to travel to the United States to visit with his children. This
argument cannot prevail for two reasons. First, it is undisputed
that both parties agreed that the children would move to the United
States and reside there with the mother until no later than
July 21, 2000. The father cannot now complain that the terms of
the May 20 agreement amount to a retention. Secondly, the father
never presented this argument to the district court. It is a well-
settled principle in this circuit that "a party . . . may not raise
on appeal issues that were not seasonably advanced (and, hence,
preserved) below." See Daigle v. Maine Med. Ctr., Inc., 14 F.3d
684, 687 (1st Cir. 1994).
 Finally, we address the father's argument that the
July 10, 1997 visitation agreement itself, stipulated to by both
parties, constitutes a denial of access amounting to a wrongful
retention. First, we note that the parties' May 20 agreement
specifically provides that "[t]he visitation according to this
agreement is subject to change by agreement of the sides." As
previously noted, the July 10 visitation agreement of which the
father now complains, was stipulated to by both sides. More
importantly, the July 10 visitation agreement clearly provides the
father with access to his children. Although it may not provide
the father with visitation on the precise terms that he desires, we
cannot conclude that this stipulated agreement amounts to a
retention of the children. Again, the father may choose to voice
both his jurisdictional and substantive objections to the
stipulated visitation agreement in the pending state court
proceedings.
 In conclusion, neither the mother nor any court has
denied the father access to his children. Although the mother has
filed a complaint in the Massachusetts Probate and Family Court
seeking to modify the parties' agreement with respect to custody,
visitation, and financial support, the father continues to possess
and exercise albeit limited rights of access to his children. We
recognize that the father may have valid legal arguments as to why
the Massachusetts court should not exercise jurisdiction over the
mother's claims. However, we conclude that the state court -- and
not this court -- is the proper forum for those arguments.
 We conclude that the father has failed to allege facts
sufficient to state a claim for retention or removal, let alone
"wrongful" retention or removal. For this reason, the district
court erred in proceeding directly to an inquiry into
"wrongfulness." Absent a threshold showing that there has been a
retention or removal, the district court lacked jurisdiction to
grant or deny the father's petition. We therefore vacate the
district court opinion and dismiss for lack of jurisdiction.
 CONCLUSION
 Based on the foregoing, we vacate the district court's
opinion and dismiss for lack of jurisdiction.