PER CURIAM.
On April 5, 2000 a complaint was filed in the United States District Court for the District of Puerto Rico by eleven individuals alleging that as citizens of the United States residing in Puerto Rico they are being deprived of the right to vote for the candidates to the offices of President and Vice-President of the United States, a condition which they view to be a “violation of their constitutional rights to the same privileges and immunities, treaty rights, due process and equal protection of the laws” enjoyed by United States citizens residing in the States.
Plaintiffs, in effect, comprise two separate groups. The first includes individuals who have always resided in Puerto Rico and whose claim is based on their alleged right to vote for the national offices in question because they consider it a right inherent in United States citizenship. The second group is comprised of former residents of states who were eligible to vote during such residence in the States but became ineligible to do so upon taking residency in Puerto Rico. Both groups claim entitlement to vote pursuant to the Constitution of the United States and pursuant to treaty obligations assumed by the United States under the International Covenant on Civil and Political Rights, U.N.T.S. No. 14668, Vol. 999 (1976) p. 171, ratified, 138 Cong. Rec. S-4781 (April 2, 1992) (“ICCPR”). In addition, the second group also calls into question the constitutionality of the Uniformed and Overseas Citizens Absentee Voting Act (NOCAVA), 42 U.S.C. §§ 1973ff-1973ff-6, which allows United States citizens residing outside the United States to vote in federal elections as absentee voters in their last state of residence. Because Puerto Rico is included within the definition of “United States,” 42 U.S.C. § 1973ff — 6(8), residents of Puer-to Rico who would otherwise qualify to vote pursuant to this statute are disqualified. This is claimed to be a violation of various constitutional provisions.
Plaintiffs sought a declaratory judgment against the United States affirming the invalidity of the denial of their alleged right to vote for the national offices in question. In addition, they sought an order requiring the United States “to take all the necessary steps” to implement their alleged right to vote for President and Vice-President.
On June 5, 2000 the United States moved to dismiss the complaint claiming, in substance, that the allegations contained in the complaint “are virtually identical to those previously brought by eleven individuals, including [Plaintiff] Igartua in the case of Igartua de la Rosa, et al. v. United States, C. 91-2506,” in which the District Court (Acosta, J.) dismissed plaintiffs’ request for declaratory and injunctive relief for failure to state a claim upon which relief could be granted. See Igartua v. United States, 842 F.Supp. 607 (D.P.R.1994), aff'd, 32 F.3d 8, 9 (1st Cir.1994), (Igartua I), cert. denied, 514 U.S. 1049, 115 S.Ct. 1426, 131 L.Ed.2d 308 (1995). The United States alleged that IgaHua I required dismissal of the present action under the principles of res judicata and stare decisis.
This motion was denied by the District Court on July 19, 2000 in an extensive opinion, see Igartua v. United States, 107 F.Supp.2d 140 (D.P.R.2000) (Igartua II), in which it ruled that the provisions of the ICCPR were not self-executing and thus did not give rise to privately enforceable rights under United States law, and further that NOCAVA did not violate Plaintiffs’ constitutional rights. It ruled, however, that preventing plaintiffs from voting in presidential and vice-presidential elections was unconstitutional.
Thereafter, on July 27, 2000 the Commonwealth of Puerto Rico and its governor, Pedro Rosselló, moved to intervene in this action, in effect supporting the claims of Plaintiffs. This intervention was al *83 lowed by the district court on July 28, 2000.
On August 1, 2000 the United States filed its Answer, alleging in defense substantially the same grounds as claimed in its Motion to Dismiss, and in addition contending that the issues presented by plaintiffs raised “political questions outside the jurisdiction of the federal courts.”
After several intervening procedural events, on August 29, 2000 the district court entered a Final Opinion and Order, essentially confirming its July 19 opinion, and entering a Final Judgment:
(1) Declaring “that the United States Citizens residing in Puerto Rico have the right to vote in Presidential elections and that its electoral votes must be counted in Congress”;
(2) Concluding “that the Government of Puerto Rico has the obligation to organize the means by which the United States citizens residing in Puerto Rico will vote in the upcoming and subsequent Presidential elections and to provide for the appointment of Presidential electors,” and ordering “the Government of Puerto Rico to act with all possible expediency to create such mechanism;” and
(3) Ordering “the Government of Puerto Rico to inform the Court of all developments related to its implementation of the Presidential vote until the votes are counted pursuant to the Twelfth Amendment to the Constitution.”
On September 10, 2000 the Legislature of Puerto Rico enacted Law No. 403 for the purpose of allowing the citizens of the United States of America domiciled in Puerto Rico to vote in the election for the offices of President and Vice-President of the United States, and to establish the procedures and mechanisms to effectuate said vote. This bill was signed into law on September 10, 2000 and became effective immediately. See Law No. 403 of September 10, 2000, § 4.6.
On September 11, 2000 the United States filed its Notice of Appeal from this Final Judgment and from the Final Opinion and Order also entered by the district court on August 29, 2000, which contained provisions substantially the same as those in the Final Judgment. Neither the Plaintiffs nor the Intervenor Government of Puerto Rico and Governor appealed.
For the reasons stated herein, we reverse and vacate the Final Judgment and Final Opinion and Order and remand with instructions to dismiss the action. See Toren v. Toren, 191 F.3d 23 (1st Cir.1999). This court, of course, expresses no opinion with regard to the validity under Puerto Rican law of Law No. 403.
I
In Igartua I, a case brought by the same lead plaintiff and lawyer who appears currently before us, this court held with undeniable clarity that the Constitution of the United States does not confer upon United States citizens residing in Puerto Rico a right to participate in the national election for President and Vice-President. Addressing precisely the argument presented to the district court in this case, this court recognized that Article II of the Constitution explicitly provides that the President of the United States shall be elected by electors who are chosen by the States, in such manner as each state’s legislature may direct. See id. at 9 (citing U.S. Const. Art. II, § 1, el. 2). We concluded that Puerto Rico, which is not a State, may not designate electors to the electoral college, and therefore that the residents of Puerto Rico have no constitutional right to participate in the national election of the President and Vice-President. See id. at 9-10.
Since our decision in Igartua I in 1994, Puerto Rico has not become a State, nor has the United States amended the Constitution to allow United States citizens residing in Puerto Rico to vote for President, as it did for United States citi *84 zens residing in the District of Columbia with the Twenty-Third Amendment to the Constitution. See id. at 10. Absent such a change in the status of Puerto Rico or an amendment to the Constitution of the United States, our decision in Igartua I controls this case, unless there has been intervening controlling or compelling authority. See Gately v. Massachusetts, 2 F.3d 1221, 1226 (1st Cir.1993) (“The doctrine of stare decisis renders the ruling of law in a case binding in future cases before the same court or other courts owing obedience to the decision.”);[1] see also Williams v. Ashland Eng’g Co., 45 F.3d 588, 592 (1st Cir.1995) (“In a multi-panel circuit, newly constituted panels are, for the. most part, bound by prior panel decisions closely on point.”).
II
The district court attempted to distinguish Igartua I in its July 19 opinion (but not in its Final Opinion and Order) on reasoning that “while Igartua I centered on Plaintiffs inability to vote for the President and Vice President, the instant case revolves around their inability to elect delegates to the electoral college.” Igartua II, 107 F.Supp.2d at 145. This effort at distinguishing Igartua I obviously fails. Under the Constitution, the appointment of electors (through the popular vote) is the means by which the President and Vice President are chosen. U.S. Const., Art. II, § 1, cl. 2; Amend. XII. This court held in Igartua I that the citizens resident in Puerto Rico do not have a right to vote in presidential elections because Puerto Rico “is not entitled under Article II to choose electors for the President.” Igartua I, 32 F.3d at 9-10.
There are two exceptions to the rule that earlier decisions are binding. First, an earlier panel decision “may be undermined by controlling authority, subsequently announced, such as an opinion of the Supreme Court.” Williams, 45 F.3d at 592. The second exception is for “those relatively rare instances in which authority that postdates the original decision, although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh development, would change its collective mind.” Id. The Commonwealth argues that those exceptions are met here in light of two Supreme Court decisions: Rice v. Cayetano, 528 U.S. 495, 120 S.Ct. 1044, 145 L.Ed.2d 1007 (Feb. 23, 2000), and U.S. Term Limits v. Thornton, 514 U.S. 779, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995). Neither case support the Commonwealth’s argument.
The Court in Rice struck down a Hawaii statute that imposed race-based voting qualifications based on the Fifteenth Amendment’s mandate that neither the National Government nor the states may deny or abridge the right to vote on account of race. See Rice, 120 S.Ct. at 1056-57. This Fifteenth Amendment ruling on racial voting classifications does not impact the reasoning in IgaHua I that Article II governs the right to vote in presidential elections. The reliance on the Court’s holding in U.S. Term Limits similarly is inapt. The Court ruled that States lack the power to impose qualifications for offices of the United States Congress in addition to those set forth in the Constitution. See 514 U.S. at 818-20, 115 S.Ct. 1842. The Court’s language describing the “fundamental principle of our representative democracy,” which appellees cite in their brief, serves to amplify the Court’s holding that the states cannot impose restrictions on federal elections, but also does not alter the Article II analysis in *85 Igartua I. Thus, neither case stands for the proposition that the right to vote in the presidential election is derived from any source other than Article II of the Constitution.
Because Igartua I is binding authority, the district court erred in not dismissing the action.
The judgment and order of the District Court is reversed and vacated and the case is remanded with instructions that the action be dismissed with prejudice.