Ada Flores **SANCHEZ**, Plaintiff,

v.

**UNITED STATES** of America et al., Defendants.

Civ. No. 74–229.

United States District Court, D. Puerto Rico.

May 31, 1974.

Oswald Evan Perkins, San Juan, P. R., for plaintiff.

Joseph A. Anglada, Asst. U. S. Atty., for defendants.

## MEMORANDUM AND ORDER

LUTHER W. YOUNGDAHL, Senior District Judge.

Plaintiff, a resident of the Commonwealth of Puerto Rico, and therefore, a citizen of the United States, challenges the constitutionality of Public Law 600, 48 U.S.C.A. § 731b et seq., contending that this provision does not permit her, as a U.S. citizen, to vote for the President and Vice President of the United States. Public Law 600 was a congressional enactment which offered the people of Puerto Rico a compact whereby they might establish a government under their own constitution. Puerto Rico accepted this compact, and in 1952, with congressional approval, the Commonwealth of Puerto Rico was established. Pursuant to the Constitution adopted by it, the Commonwealth now elects its own governor and legislature, appoints its own judges and cabinet officials, sets its own budgetary and educational policies, and amends its own civil and criminal laws. Plaintiff now moves this Court, pursuant to 28 U.S.C. § 2282,[1] to convene a three-judge court to consider the constitutional challenge inherent in her inability as a citizen of the United States residing in Puerto Rico to vote for the President and Vice President.

The responsibility of this Court in determining whether to request a three-judge district court is a narrow one. To justify convening a three-judge court, this Court must determine whether the constitutional question raised is a substantial one. Ex parte Poresky, 290 U. S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933); Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); Anderson v. Richardson, 454 F.2d 596 (6th Cir. 1972). The mere assertion of unconstitutionality is insufficient for action under 28 U.S.C. § 2282. *See* Siminoff v. Murff, 164 F.Supp. 34 (S.D.N.Y.) rev'd on other grounds, 267 F.2d 705 (2nd Cir. 1959).

A constitutional claim is insubstantial and does not require the convening of a three-judge court if it is obviously without merit or its unsoundness has been foreclosed by previous decisions. California Water Service Co. v. City of Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L. Ed. 1323 (1938); Bulluck v. Washington, 152 U.S.App.D.C. 39, 468 F.2d 1096 (1972). In the event of either of these situations, the application of a three-

---

1. That section provides:

"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any Act of Congress for repugnance to the Constitution of the United States shall not be granted by any district court or judge thereof unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

judge district court must be denied and the complaint dismissed.

■■ The constitutional challenge in this instance is plainly without merit. Although plaintiff is a U.S. citizen, under the Constitution of the United States the President is not chosen directly by the citizens, but by the electoral colleges in the States and the District of Columbia. Each State chooses "in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress . . . ."[2] Today, electors are chosen by popular vote on State-wide tickets and State legislatures generally determine the qualifications for presidential electors. The whole thrust of this is that the Constitution does not, by its terms, grant *citizens* the right to vote, but leaves the matter entirely to the *States*.

■ Although citizenship may be a prerequisite to voting, the right to vote is not an essential right of citizenship. For example, prior to the Nineteenth Amendment, citizens who were women could not vote; today, citizens under the age of 18 cannot vote. This very proposition is best evidenced by the fact that 6 of the 16 amendments added to the Constitution since the Bill of Rights deal with extending the voting privilege. The Fifteenth Amendment guarantees the voting rights of former slaves, the Seventeenth Amendment provides for the direct election of U.S. Senators, the Nineteenth Amendment grants the vote to women, the Twenty-Third Amendment grants the vote to citizens residing in the District of Columbia, the Twenty-Fourth Amendment abolishes poll taxes as a prerequisite to voting, and the Twenty-Sixth Amendment grants the vote to 18, 19, and 20 year old citizens.

■ The Supreme Court of the United States has unanimously held that the statutes of the Commonwealth of Puerto Rico are "State statute[s]" solely for purposes of the Three Judge Court Act, 28 U.S.C. § 2281. Calero-Toledo v. Pearson Yacht Leasing Co., 42 U.S.L.W. 4693, —— U.S. ——, 94 S.Ct. 2080, 40 L. Ed.2d 452 (1974). Although this decision establishes that Puerto Rico is a State for purposes of three-judge court jurisdiction, it cannot be read to alter the political status of the Commonwealth. Its status remains unchanged. Puerto Rico continues to be a duly constituted, existing political entity, but it is not a State in the federal union as are the other 50 States. As stated by Chief Judge Cancio in Alcoa Steamship Co. v. Perez, 295 F.Supp. 187, 196–197 (D.P. R.1968):

> "Whatever the actual status of Puerto Rico may be in all of its details, its present status is certainly not that of a State of the Union; nor is it that of a Territory, unincorporated or incorporated into the Union preparatory to statehood. Thus, it has happened that legal conclusions regarding the Commonwealth of Puerto Rico have varied from one extreme to the other. Public Law 600 did not abridge what sovereign powers Puerto Rico had been granted under the Foraker and Jones Acts but rather continued them and, if anything, amplified them. Puerto Rico has neither been incorporated into the United States nor been made a State of the Union nor an independent republic. The Commonwealth of Puerto Rico is a body politic which has received, through a compact with the Congress of the United States, full sovereignty over its internal affairs in such a manner as to preclude a unilateral revocation, on the part of Congress, of that recognition of powers." [Citations omitted.]

The question of the presidential vote for the Commonwealth of Puerto Rico has been a topic of vigorous discussion for many years. In April of 1970, President Nixon and former Governor Ferre jointly appointed an Ad Hoc Advisory

2. U.S.Const. art. II, § 1, cl. 2.

Group to study the feasibility of extending the right to vote for President and Vice President to the citizens of Puerto Rico. In its report, issued on August 18, 1971,[3] the members strongly came out in favor of granting the presidential vote to the citizens of the Commonwealth. The report stated:

"We . . . recommend and urge that citizens of the United States residing in Puerto Rico be granted the right to vote for President and Vice President of the United States. We strongly believe that place of residence should not be the basis for denying any qualified citizen his right to vote for the two Federal officials who represent us all, not just a portion of this citizenry.

"We recommend that a referendum be held to determine whether a majority of the electorate in Puerto Rico wants to vote for candidates for President and Vice President.

"We deem this referendum essential, not only to comply with the provisions of Law No. 1 of the Legislature of Puerto Rico, approved December 23, 1966 (art. 1, sec. 4), but also to comply with one of the basic principles approved in the 1967 plebiscite: 'That no change in the relations between the United States and Puerto Rico shall take place unless previously approved by a majority of the electors in a referendum held to that effect.' The granting of such right to U. S. citizens residing in Puerto Rico would constitute a change in the present relations between the United States and Puerto Rico.

"The matter is of such importance that it should be submitted to the people as soon as possible, preferably prior to the next general election, and as a separate question, independent of other issues.

"The Ad Hoc Advisory Group recommends that if a majority of the electorate gives a mandate in favor of the right to vote for President and Vice President, the Governor and the Legislative Assembly of the Commonwealth of Puerto Rico petition the President and the Congress of the United States to take whatever action may be considered appropriate for the exercise of that right."

This Court deeply shares in the expression of these views and is of the opinion that it is inexcusable that there still exists a substantial number of U.S. citizens who cannot legally vote for the President and Vice President of the United States. However, until the Commonwealth votes for Statehood, or until a constitutional amendment is approved which extends the presidential and vice presidential vote to Puerto Rico, there is no substantial constitutional question raised by plaintiff which would justify the convening of a three-judge court pursuant to 28 U.S.C. § 2282.

Accordingly, the motion to convene a three-judge court is denied and the complaint dismissed.

---

3. Report of the Ad Hoc Advisory Group on the Presidential Vote for Puerto Rico (1971).