738 F.2d 1017
 The ATTORNEY GENERAL OF the TERRITORY OF GUAM on Behalf of
ALL U.S. CITIZENS RESIDING IN GUAM QUALIFIED TO
VOTE PURSUANT TO the ORGANIC ACT, et
al., Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 83-1890.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 16, 1984.
Decided July 24, 1984.
 
 Suzzane K. Horrigan, Asst. Atty. Gen., Territory of Guam, Agana, Guam, for plaintiffs-appellants.
 Edward R. Cohen, Dept. of Justice, Washington, D.C., for defendant-appellee.
 Appeal from the United States District Court for the Territory of Guam.
 Before ANDERSON, SCHROEDER, and ALARCON, Circuit Judges.
 SCHROEDER, Circuit Judge.
 
 
 1
 The plaintiffs in this case, the Attorney General of Guam and four individuals, sued the United States on behalf of American citizens who are residents of Guam and who are registered to vote in territorial elections. Plaintiffs sought a judgment declaring the right of these citizens to vote in the United States Presidential and Vice Presidential elections. The district court dismissed. We affirm because the complaint failed to state a claim for which relief could be granted.[1]
 
 
 2
 Guam is an unincorporated territory of the United States, under the plenary control of Congress pursuant to Article IV, section 3 of the Constitution. In 1950, Congress passed the Organic Act of the Territory of Guam, 64 Stat. 384 (codified as amended at 48 U.S.C. Secs. 1421-1424 (1976 & Supp. V 1981)), which declared Guam a territory and established its government. The Organic Act incorporated specifically, as part of a bill of rights, the privileges and immunities clause of the Constitution, 48 U.S.C. Sec. 1421b(u), and the equal protection clause of the fourteenth amendment, 48 U.S.C. Sec. 1421b(n). At the same time Congress provided that Guamanians were American citizens. See 8 U.S.C. Sec. 1407 (1982). See generally H.R.Rep. No. 1365, 82d Cong., 2d Sess., reprinted in 1952 U.S.Code Cong. & Ad.News 1653, 1734; P. Carano & P. Sanchez,A Complete History of Guam 365-98 (1964).
 
 
 3
 American citizens who are residents of Guam do not vote in the election of the President or Vice President of the United States, and plaintiffs contend that the ability to do so is a privilege or immunity of citizenship. The Constitution does not grant to American citizens the right to elect the President, however. Article II, section 1, clause 2 of the United States Constitution provides:
 
 
 4
 Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the States may be entitled in the Congress ....
 
 
 5
 Electors appointed by the states elect the President and Vice President. U.S. Const., Article II, section 1, clause 3. See also Anderson v. Celebrezze, 460 U.S. 780, n. 18, 103 S.Ct. 1564, 1573 n. 18, 75 L.Ed.2d 547 (1983) ("The Constitution expressly delegates authority to the States to regulate selection of Presidential electors ....").
 
 
 6
 Thus, citizens do not vote for the President. Electors, appointed by "each State," vote for the President. Although the merits and shortcomings of the electoral college system have been debated over the years, see, e.g., Feerick, The Electoral College--Why It Ought to Be Abolished, 37 Fordham L.Rev. 1 (1968); Rosenthal, The Constitution, Congress, and Presidential Elections, 67 Mich.L.Rev. 1 (1968), it has not been replaced by direct election. The right to vote in presidential elections under Article II inheres not in citizens but in states: citizens vote indirectly for the President by voting for state electors. Since Guam concededly is not a state, it can have no electors, and plaintiffs cannot exercise individual votes in a presidential election. There is no constitutional violation.
 
 
 7
 A constitutional amendment would be required to permit plaintiffs to vote in a presidential election. The District of Columbia experience illustrates this point, for American citizens on Guam are not the first American citizens not residing in states to complain about their inability to vote in presidential elections. Until the passage of the twenty-third amendment to the Constitution, American citizens who lived in the District of Columbia could not participate in presidential elections. The District of Columbia is not a state, but rather is under the exclusive control of Congress pursuant to Article I, section 8, clause 17 of the Constitution.
 
 
 8
 The twenty-third amendment to the Constitution solved the problem of those citizens by ordering that the District would appoint electors who would "be considered, for the purposes of the election of President and Vice President, to be electors appointed by a State ...." U.S. Const. amend XXIII, Sec. 1. The House Committee on the Judiciary, reporting on the proposed amendment, recognized the obvious barrier of Article II, section 1, when it noted that absent an amendment, "voting rights are denied District citizens because the Constitution provides machinery only through the States for the selection of the President and Vice President. (Art. II, sec. 1)." H.R.Rep. No. 1698, 86th Cong.2d Sess., reprinted in 1960 U.S.Code Cong. & Ad.News 2. The report also observed that "apart from the Thirteen Original States, the only areas which have achieved national voting rights have done so by becoming States as a result of the exercise by the Congress of its powers to create new States pursuant to Article IV, section 3, clause 1 of the Constitution." Id. See also Sanchez v. United States, 376 F.Supp. 239, 242 (D.Puerto Rico 1974) (suit by American citizens residing in Puerto Rico to vote in presidential elections did not present a substantial constitutional question that would justify convening a three-judge court).
 
 
 9
 The plaintiffs argue that a constitutional amendment is not necessary because, since the passage of the twenty-third amendment, the Supreme Court has so expansively interpreted Congressional power over federal elections that Congress already has legislated presidential voting rights for American citizens who are not residents of any state. Specifically, plaintiffs point to the decision in Oregon v. Mitchell, 400 U.S. 112, 91 S.Ct. 260, 27 L.Ed.2d 272 (1970), and the Overseas Citizens Voting Rights Act (OCVRA), 42 U.S.C. Sec. 1973dd (1976 & Supp. V 1981), which relied upon Mitchell for its constitutional basis. Neither Oregon v. Mitchell nor the OCVRA, however, show that Congress has authorized all American citizens, even though not residents of a state, to vote in the presidential election. Both are premised upon the rights of citizens of states.
 
 
 10
 Oregon v. Mitchell upheld Congressional voting rights legislation which struck down state "durational residency" provisions and substituted nationwide uniform state residency requirements for voting for presidential and vice-presidential electors. Voting Rights Amendments of 1970, Pub.L. No. 89-110, Title II, Sec. 202, as added Pub.L. No. 91-285, Sec. 6, 84 Stat. 316 (codified at 42 U.S.C. Sec. 1973aa-1 (1976)). All of the five opinions in the case assume residency in a state. See 400 U.S. at 124, 91 S.Ct. at 264 (J. Black); 400 U.S. at 147-50, 91 S.Ct. at 276-78 (J. Douglas); 400 U.S. at 213-16, 91 S.Ct. at 309-10 (J. Harlan); 400 U.S. at 237-40, 91 S.Ct. at 321-22 (J. Brennan); 400 U.S. at 285-92 (J. Stewart). This assumption is consistent with the Voting Rights Amendments section on residency requirements, which provides for a nationally uniform system of registration for "all duly qualified residents of [a] State." 42 U.S.C. Sec. 1973aa-1(d).
 
 
 11
 The OCVRA preempted state residency voting requirements for disenfranchised American citizens who had been residents of states but, retaining their American citizenship, moved to foreign countries. Under the Act, citizens who live outside this country may vote by absentee ballot in their last state of residency, whether or not they pay taxes in that state and whether or not they have a definite plan to return to that state.
 
 
 12
 The legislative history of the OCVRA makes clear that it was premised constitutionally on prior residence in a state. With regard to the constitutionality of the Act, a House Report stated:
 
 
 13
 The Committee believes that a U.S. citizen residing outside the United States can remain a citizen of his last State of residence and domicile for purposes of voting in Federal elections under this bill, as long as he has not become a citizen of another State and has not otherwise relinquished his citizenship in such prior State.
 
 
 14
 H.R.Rep. No. 649, 94th Cong., 1st Sess. 7, reprinted in 1975 U.S.Code Cong. & Ad.News 2358, 2364. Calling the proposed legislation a "reasonable extension of the bona fide residence concept" based on Mitchell, id. at 6, reprinted in 1975 U.S.Code Cong. & Ad.News at 2363, the House Report stated that the purpose of the bill was to "assure the right of otherwise qualified private U.S. citizens residing outside the United States to vote in federal elections." Id. at 1, reprinted in 1975 U.S.Code Cong. & Ad.News at 2358.
 
 
 15
 Plaintiffs' claim in this case is asserted on behalf of all voters who vote in Guam elections. It is not a claim on behalf of those who have previously qualified to vote in a state election. The OCVRA does not evidence Congress's ability or intent to permit all voters in Guam elections to vote in presidential elections. The OCVRA rationale simply is inapplicable to the problem plaintiffs raise, and the judiciary is not the institution of our government that can provide the relief they seek.
 
 
 16
 Affirmed.
 
 
 
 [1]
 There were additional grounds for the district court's dismissal. It held that the Territory of Guam does not have standing to bring this lawsuit as parens patriae against the United States. See South Carolina v. Katzenbach, 383 U.S. 301, 324, 86 S.Ct. 803, 816, 15 L.Ed.2d 769 (1966). It further held that the Assistant Attorney General who was representing Guam was only provisionally admitted to practice before the district court and could not represent the individual plaintiffs, whose standing was not challenged. On appeal the government has not taken issue with appellants' counsel's qualification, and we therefore must address the merits of the individual plaintiffs' claims