**Gregorio IGARTUA DE LA ROSA, et al., Plaintiffs, Appellants,**

v.

**UNITED STATES of America, Defendant, Appellee.**

**No. 94–1174.**

United States Court of Appeals, First Circuit.

Submitted June 7, 1994.

Decided Aug. 17, 1994.

Gregorio Igartua, on brief pro se.

Guillermo Gil, U.S. Atty., Frank W. Hunger, Asst. U.S. Atty., Barbara C. Biddle and Jacob M. Lewis, Attys., Appellate Staff Civil Div., on brief for appellee.

Before TORRUELLA, CYR and BOUDIN, Circuit Judges.

PER CURIAM.

Appellant residents of Puerto Rico allege that their inability to vote in the United States presidential election violates their constitutional rights. Some appellants, who previously voted in presidential elections while residing elsewhere but who are now ineligible to vote in those elections, also challenge the constitutionality of the Uniformed and Overseas Citizens Absentee Voting Act, 42 U.S.C. § 1973ff *et seq.* The district court dismissed appellants' request for declaratory and injunctive relief for failure to state a claim upon which relief could be granted. We summarily affirm.

I

While appellants are citizens of the United States, the Constitution does not grant citizens the right to vote directly for the President. Instead, the Constitution provides that the President is to be chosen by electors who, in turn, are chosen by *"each state . . .* in such manner as the Legislature thereof may direct." U.S. Const. art. II, § 1, cl. 2 (emphasis added). Pursuant to Article II, therefore, only citizens residing in *states* can vote for electors and thereby indirectly for the President. *See Attorney General of Guam on behalf of All U.S. Citizens Residing in Guam, etc. v. United States,* 738 F.2d 1017, 1019 (9th Cir.1984), *cert. denied,* 469 U.S. 1209, 105 S.Ct. 1174, 84 L.Ed.2d 323 (1985) ("The right to vote in presidential elections under Article II inheres not in citizens but in states; citizens vote indirectly for the President by voting for state electors."). Since Puerto Rico is concededly not a state, *see Trailer Marine Transport Corp. v. Rivera Vazquez,* 977 F.2d 1, 7 (1st Cir.1992) (status of Puerto Rico "is still not the same as that of a State in the Federal Union"), it is

not entitled under Article II to choose electors for the President, and residents of Puerto Rico have no constitutional right to participate in that election. *See Attorney General of Guam,* 738 F.2d at 1019 ("Since Guam concededly is not a state, it can have no electors, and plaintiffs cannot exercise individual votes in a presidential election."); *Sanchez v. United States,* 376 F.Supp. 239, 241 (D.P.R.1974) (finding similar claim "plainly without merit" for purpose of convening three-judge court).

The only jurisdiction, not a state, which participates in the presidential election is the District of Columbia, which obtained that right through the twenty-third amendment to the Constitution. Such a constitutional amendment was necessary precisely "because the Constitution ha[d] restricted th[e] privilege [of voting in national elections] to citizens who reside[d] in States." H.R.Rep. No. 1698, 86th Cong., 2d Sess. 2 (1960), *reprinted in* 1960 U.S.Code Cong. & Ad.News 1459, 1460. Only a similar constitutional amendment or a grant of statehood to Puerto Rico, therefore, can provide appellants the right to vote in the presidential election which they seek. *See Attorney General of Guam,* 738 F.2d at 1019–20.[1]

## II

■ Some appellants, who previously voted in presidential elections while residing elsewhere, also assert that their constitutional rights to due process and equal protection have been violated by the Uniformed and Overseas Citizens Absentee Voting Act [Act]. The Act provides that United States citizens, including residents of Puerto Rico, *see* 42 U.S.C. § 1973ff–6(6) & (7), who reside outside the United States retain the right to vote via absentee ballot in their last place of residence in the United States, as long as these citizens otherwise qualify to vote under laws of the jurisdiction in which they last resided. 42 U.S.C. § 1973ff–1. It does not apply, however, to citizens who move from one jurisdiction to another within the United States. *See* 42 U.S.C. § 1973ff–6(5) (defining "overseas voter" as a person "who resides outside the United States").

■ Appellants claim that the Act illegally discriminates against citizens who have taken up residence in Puerto Rico rather than outside the United States, because the former are not entitled by the Act to vote in their prior state of residence. In fact, however, the Act does not distinguish between those who reside overseas and those who take up residence in Puerto Rico, but between those who reside overseas and those who move anywhere within the United States. Given that such a distinction neither affects a suspect class nor infringes a fundamental right,[2] it need only have a rational basis to pass constitutional muster. *See FCC v. Beach Communications, Inc.,* —— U.S. ——, ——, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993) (equal protection); *Nebbia v. New York,* 291 U.S. 502, 537, 54 S.Ct. 505, 516, 78 L.Ed. 940 (1934) (due process).

Without the Act, voters who move overseas could lose their right to vote in all federal elections. However, voters who move to a new residence within the United States are eligible to vote in a federal election in their

---

1. Appellants' contention that their right to vote in the presidential election is secured by Article 25 of the International Covenant on Civil and Political Rights, 6 I.L.M. 368 (1967) (entered into force Sept. 8, 1992), is without merit. Even if Article 25 could be read to imply such a right, Articles 1 through 27 of the Covenant were not self-executing, *see* 138 Cong.Rec. S4784 (daily ed. Apr. 2, 1992), and could not therefore give rise to privately enforceable rights under United States law. *See United States v. Green,* 671 F.2d 46, 50 (1st Cir.), *cert. denied,* 457 U.S. 1135, 102 S.Ct. 2962, 73 L.Ed.2d 1352 (1982); *United States v. Thompson,* 928 F.2d 1060, 1066 (11th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 270, 116 L.Ed.2d 222 (1991). Nor could the Covenant override the constitutional limits discussed above. *See Reid v. Covert,* 354 U.S. 1, 15–16, 77 S.Ct. 1222, 1230, 1 L.Ed.2d 1148 (1957) (plurality opinion).

2. Although it affects the right to vote, the Act does not infringe that right but rather limits a state's ability to restrict it. Moreover, nothing in the Act "prevent[s] any State from adopting any voting practice which is less restrictive than the practices prescribed in the Act." H.R.Rep. No. 765, 99th Cong., 2d Sess. 19 (1986), *reprinted in* 1986 U.S.Code Cong. & Ad.News 2009, 2023.

new place of residence.[3] Hence, Congress had a rational basis for seeking to protect the absentee voting rights only of the former. While the Act does not guarantee that a citizen moving to Puerto Rico will be eligible to vote in a presidential election, this limitation is not a consequence of the Act but of the constitutional requirements discussed above.

Appellants' request for oral argument is *denied*. The dismissal of appellants' claims is *affirmed*. *See* 1st Cir.Loc.R. 27.1.

---

**3.** For example, a citizen who moves to Puerto Rico would be eligible to vote in the federal election for the Resident Commissioner. *See* Puerto Rican Federal Relations Act, 48 U.S.C. § 891 (Resident Commissioner chosen by "[t]he qualified electors of Puerto Rico"); 42 U.S.C. § 1973ff–6(3) (defining "[f]ederal office" to include Resident Commissioner).