# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EMILIA DUARTE,
             *Plaintiff-Appellant,*

v.

HECTOR BARDALES,
             *Defendant-Appellee.*

No. 06-56808

D.C. No.
CV-06-00158-TJW

OPINION

Appeal from the United States District Court
for the Southern District of California
Thomas J. Whelan, District Judge, Presiding

Argued November 6, 2007
Submitted January 11, 2008
Pasadena, California

Filed May 20, 2008

Before: Myron H. Bright,* Harry Pregerson, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Bright;
Dissent by Judge Bea

*The Honorable Myron H. Bright, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

5785

## COUNSEL

Beverly Baker-Kelly, Oakland, California, and Howard Moore, Jr., Berkeley, California, for the appellant.

Victor Mordey, Chula Vista, California, for the appellee.

## OPINION

BRIGHT, Circuit Judge:

On January 23, 2006, Emilia Duarte ("Duarte") filed in United States District Court for the Southern District of California a petition for the return of her children pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention"), as implemented by the International Child Abduction Remedies Act, 42 U.S.C. §§ 11601-11610 ("ICARA"). After Duarte failed to appear before the court for a scheduled hearing, the district court entered judgment denying Duarte's Hague Petition. Duarte

timely filed a motion to vacate the judgment under Fed. R. Civ. P. 59(e) ("Rule 59(e)"), which the district court denied. Duarte now appeals the district court's order denying her motion to set aside judgment. We reverse and remand, ruling that the district court abused its discretion by denying Duarte's Rule 59(e) motion.[1]

Because the district court must decide the merits of Duarte's petition on remand, we also address whether equitable tolling of time requirements under the Hague Convention is available to Duarte. We hold that it is available and therefore the district court may consider whether to apply equitable tolling to Duarte's Hague Petition.

I.

A. *Factual Background*

Emilia Duarte and Hector Bardales ("Bardales") entered the United States from Mexico in 1990. Together they have four children—age 17, age 16, age 11, and age 9.[2] Duarte and Bardales never married. In January 2000, they separated and Duarte returned to Mexico with their four children. In 2002, the two oldest children visited Bardales in California. After expressing that they did not want to live with Duarte, they established residency with Bardales in San Diego, California. The two youngest children remained with Duarte in Mexico.

---

[1]The primary issue in this case is whether the district court properly denied Duarte's Rule 59(e) motion to vacate judgment. Footnotes 1 and 2 in Judge Bea's dissent refer to issues that are not before us. The district court made no findings on the matters referred to in those extraneous footnotes—matters that might prove to be harmful to the children.

[2]The birthdays of the children from oldest to youngest are: October 16, 1990, October 25, 1991, October 26, 1996, and June 6, 1998. Because the Hague Convention does not apply once a child reaches the age of sixteen, the two older siblings were dropped from the case in December 2006. *See* Hague Convention art. 4.

On July 8, 2003, Duarte brought the two youngest children to visit with Bardales in Tijuana, Mexico. While there, Bardales removed them from Mexico and brought them to California to live with him. It is undisputed that Bardales took the two youngest children without Duarte's knowledge or permission. Bardales then immediately filed petitions in California Superior Court for emergency child custody and to establish paternity. The state court awarded Bardales sole custody until Duarte appeared in state court.

In September 2003, Duarte filed a Hague Petition with the Central Authority in Mexico, which was transmitted to the Central Authority in the United States a month later.[3] In December 2003, Duarte's petition was turned over to the San Diego District Attorney's Office and in August 2004 was assigned to a Deputy District Attorney. For reasons unknown, Duarte's petition was not filed in California state court until nearly a year later in April 2005.

Duarte's state Hague Petition was consolidated with Bardales's paternity petition, and the case was set for a hearing in California Superior Court on April 25, 2005. Duarte appeared at that hearing without counsel. The court granted a continuance to permit Duarte to retain counsel. Duarte, however, failed to show up at two subsequent court dates and as a result, the court removed Duarte's petition from the calendar without prejudice and awarded Bardales sole custody of the children. Duarte appealed this decision to the California Court of Appeal.

While her appeal was pending, Duarte filed the present Hague Petition in federal court.[4] The California Court of

---

[3]Article 6 of the Convention requires every "Contracting State [to] designate a Central Authority to discharge the duties which are imposed by the Convention upon such authorities." Hague Convention art. 6.

[4]The federal and state courts have concurrent jurisdiction under ICARA. 42 U.S.C. § 11603(a).

Appeal stayed Duarte's appeal pending adjudication of her Hague Petition in federal court.

## B.    Proceedings Before the Federal District Court

The district court scheduled a hearing on Duarte's Hague Petition for September 1, 2006. At the hearing, Duarte's counsel requested a continuance because Duarte could not enter the United States. Her counsel explained that two days prior to the scheduled hearing date, her bag, containing her passport and visa, was stolen as she was leaving a train station in Mexico. The district court denied the request for a continuance on the grounds that Duarte's counsel failed to offer sufficient proof that Duarte's purse was stolen, and Duarte had a "record of non-appearance" before both the federal and state courts. The district court tentatively denied Duarte's Hague Petition because she was not present to establish a prima facie case of unlawful removal or retention. The court stayed entry of judgment for two weeks to give Duarte an opportunity to file with the court a certified police report. If Duarte failed to provide a certified police report by September 15, 2006, the court would enter judgment denying Duarte's petition.

On September 15, 2006, Duarte filed, as proof that her purse was stolen, a declaration from a Transit Authority Agent and a copy of the police report. Duarte also indicated that it was not possible to obtain a certified police report in Mexico because transit authority agents are not permitted to have such documents notarized. Duarte requested that the district court accept the declaration and copy of the police report in lieu of a certified police report. The district court rejected Duarte's offer of proof finding the declaration and traffic report insufficient because: (1) there was no evidence that an agency generated the written report; (2) Duarte's counsel represented to the court that obtaining a certified police report would be "no problem"; and (3) it was highly improbable that the report was filed on the day of the theft. The district court

lifted the stay on September 15, 2006 and entered final judgment denying Duarte's petition.[5]

On September 29, 2006, Duarte timely filed a motion to alter or amend the judgment of the district court pursuant to Rule 59(e). Duarte argued that the district court committed manifest error in entering judgment denying Duarte's petition. Specifically, Duarte claimed that it was impossible for her to comply with the court's order to provide a certified police report because such reports are not issued in Mexico. In support of her motion, Duarte presented evidence from several attorneys and government officials in Mexico declaring that Duarte reported to the police that her purse was stolen on August 29, 2006, and that the Transit Authority in Mexico does not issue certified or non-certified police reports.

In a written order, the district court practically conceded that it may have committed clear error when, as a result of Duarte's failure to submit a certified police report, it entered judgment against her. The court, however, did not grant Duarte's Rule 59(e) motion on that basis, but instead ruled on the merits of Duarte's Hague Petition. The court concluded that because Duarte's Hague Petition did not entitle her to any relief, the production and acceptance into evidence of a police report would not have affected the outcome of the case. Accordingly, the court denied Duarte's Rule 59(e) motion. This appeal followed.

II.

"A denial of a motion for reconsideration under Rule 59(e) is construed as one denying relief under Rule 60(b) and will not be reversed absent an abuse of discretion." *Pasatiempo v. Aizawa*, 103 F.3d 796, 801 (9th Cir. 1996) (citing *Barber v.*

---

[5]The order denying Duarte's offer of proof and entering judgment was entered on the court's docket on Monday, September 18, 2006.

*Hawaii*, 42 F.3d 1185, 1198 (9th Cir. 1994); *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1441 (9th Cir. 1991)).

**[1]** It is appropriate for a court to alter or amend judgment under Rule 59(e) if "(1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001). After reviewing the record, we determine that the court's denial of the motion was clear error or manifestly unjust and thus an abuse of discretion.

**[2]** First, in denying Duarte's Rule 59(e) motion, the district court seemed to recognize that it was a mistake to enter judgment against Duarte because she failed to provide a certified police report when it was impossible for her to obtain such certification. Once the court acknowledged that the basis underlying its original judgment was wrong, it was error not to set aside the judgment.

**[3]** Second, it was clearly improper for the district court not to follow through with its representation that if Duarte submitted proof that her purse was stolen it would reschedule the hearing. At the September 1, 2006 hearing, the court stated, "Failure to supply me with a certified copy of that report will result in the entry of that judgment which I just indicated as a [sic] tentative." Sept. 1, 2006 Hr'g Tr. at 5. The district court went on to state, "And so if we see that on the 15th, if you've got that on the 15th, *then* I'll put the matter back on the calendar for a status [sic] and we'll address any depositions or anything else that you want to address." *Id.* at 9. In our view, the district court could not have been any clearer: If Duarte provided sufficient proof that her purse was stolen, the court would not enter judgment and would place the September hearing back on the calendar. At the very least, to preserve the fairness and the integrity of the judicial proceedings, the district court should have followed its own representations

and put the case back on the calendar once Duarte provided a certified copy of the police report (or its equivalent). At the time the court denied Duarte's Rule 59(e) motion, it was apparent that the proof submitted by Duarte served the purpose of providing a certified copy of the police report.

**[4]** Finally, it was error for the district court to decide the merits of Duarte's petition when the only issue before it was whether, under Rule 59(e), the court should vacate the previously entered final judgment.

With respect to the merits of Duarte's Hague Petition, the record was incomplete. Specifically, a significant dispute existed between the parties as to whether the filing period for Duarte's Hague Petition should be tolled.[6] This was a critical issue in determining the merits of Duarte's petition. If tolling did not apply, Duarte had filed her petition more than a year from wrongful removal, and Bardales could assert the affirmative defense that the children are well settled and should not be returned. *See* infra Part III. If, however, tolling did apply then the "well settled" affirmative defense was not available to Bardales.

**[5]** In denying Duarte's Rule 59(e) motion, the district court determined that Bardales did not hide the children from Duarte and therefore equitable tolling did not apply. In so doing, the court disregarded the fact that the record was incomplete on the issue of tolling. Indeed, Duarte provided

---

[6]Duarte contended that the court should toll the period between September 1, 2003 and June 2, 2005, because during that time Bardales hid the children from her. She claims that she did not know their whereabouts or have any contact with them until Bardales's attorney contacted her on June 2, 2005 and gave her Bardales's phone number. Duarte argues that during this period she made genuine efforts to locate Bardales and the children to no avail. Bardales contended that he did not hide the children from Duarte. He argued that because he and the children continued to reside at the same address where Bardales and Duarte lived prior to their separation in 2000, Duarte could have easily located the children.

the district court with the names of witnesses and a list of exhibits she intended to introduce at the September hearing on the issues of tolling and removal. Because the court ruled on the merits sua sponte and without notice to the parties when it denied the Rule 59(e) motion, Duarte was never given the opportunity to introduce this additional evidence and complete the record on tolling. This, we hold, was error.

[6] Accordingly, Duarte is entitled to relief from the judgment.

On remand the district court will have to decide whether to toll the one-year filing period. Therefore, we must now address whether equitable tolling is available under the Hague Convention and ICARA, an issue of first impression in this Circuit.

## III.

[7] "The Hague Convention on the Civil Aspects of International Child Abduction is an international treaty among the United States and fifty other countries. . . . [and] only applies when both countries are parties to it."[7] *Gonzalez v. Gutierrez*, 311 F.3d 942, 944 (9th Cir. 2002) (citing Hague Convention art. 35). The Convention is intended to "secure the prompt return of children wrongfully removed or retained." Hague Convention art. 1. "It is designed to restore the 'factual' status quo which is unilaterally altered when a parent abducts a child and aims to protect the legal custody rights of the non-abducting parent." *Feder v. Evans-Feder*, 63 F.3d 217, 221 (3d Cir. 1995) (citing Hague International Child Abduction Convention, 51 Fed. Reg. 10,494, 10,505 (Dep't of State March 26, 1986) (Pub. Notice)). In addition, the Convention is intended to "deprive parties of any tactical advantages

---

[7]Mexico became a party to the Convention on October 1, 1991. *See* http://travel.state.gov/family/abduction/country/country_508.html (last visited Jan. 28, 2008).

gained by absconding with a child to a more favorable forum." *Holder v. Holder*, 392 F.3d 1009, 1013 (9th Cir. 2004). "[A] judicial proceeding under the Convention is not meant, however, to inquire into the merits of any custody dispute underlying the petition for return." *Gonzalez*, 311 F.3d at 945; Hague Convention art. 19.

**[8]** Article 12 requires the judicial or administrative authority to "order the return of the child" who has been wrongfully removed or retained within the meaning of the Convention if "at the date of the commencement of the proceedings . . . a period of less than one year has elapsed from the date of the wrongful removal or retention." Hague Convention art. 12. A person seeking the return of a child under the Convention may do so by filing a petition in a court where the child is located. 42 U.S.C. § 11603(b). The petitioner has the burden of proving by a preponderance of the evidence that "the child has been wrongfully removed or retained within the meaning of the Convention." § 11603(e)(1)(A). Removal is wrongful when:

> (a)   it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

> (b)   at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Hague Convention art. 3.

"Return is not required, however, if the abductor can establish one of the Convention's narrow affirmative defenses," *Gaudin v. Remis*, 415 F.3d 1028, 1034-35 (9th Cir. 2005), which includes the "well settled" affirmative defense under

Article 12. Article 12 provides that return will not be required if the abductor establishes by a preponderance of the evidence that the petition for return was filed more than a year from the wrongful removal and the child is well settled in her new environment. Hague Convention art. 12; § 11603(e)(2)(B).

[9] This one-year filing period is of particular importance under the Convention because the "well settled" affirmative defense is *only* available if the petition for return was filed more than a year from wrongful removal. The potentially prejudicial effect of failing to file within a year from removal has led courts to apply equitable principles to toll the one-year period, notwithstanding the fact that both the Convention and ICARA are silent as to whether such principles apply. *See Furnes v. Reeves*, 362 F.3d 702, 723 (11th Cir.), *cert. denied*, 543 U.S. 978 (2004); *Giampaolo v. Erneta*, 390 F. Supp. 2d 1269, 1282 (N.D. Ga. 2004); *Belay v. Getachew*, 272 F. Supp. 2d 553, 562-64 (D. Md. 2003); *Bocquet v. Ouzid*, 225 F. Supp. 2d 1337, 1348 (S.D. Fla. 2002); *Mendez Lynch v. Mendez Lynch*, 220 F. Supp. 2d 1347, 1362-63 (M.D. Fla. 2002); *but see Anderson v. Acree*, 250 F. Supp. 2d 872, 875 (S.D. Ohio 2002) (holding equitable tolling does not apply to petitions filed under the Hague Convention); *Toren v. Toren*, 26 F. Supp. 2d 240, 244 (D. Mass. 1998), *vacated on other grounds*, 191 F.3d 23 (1st Cir. 1999) (same).

[10] The Eleventh Circuit is the only Circuit to have decided whether equitable tolling is applicable under the Convention. *Furnes*, 362 F.3d at 723. In *Furnes*, the court held that the one-year filing requirement could be tolled under circumstances where the abducting parent took steps to conceal the whereabouts of the child. *Id.* In so holding, the court adopted the district court's reasoning in *Mendez Lynch*. *Id.* ("We agree . . . that equitable tolling may apply to ICARA petitions for the return of a child where the parent removing the child has secreted the child from the parent seeking return.") (citing *Mendez Lynch*, 220 F. Supp. 2d at 1362-63)).

In *Mendez Lynch*, the court reasoned that "[i]f equitable tolling does not apply to ICARA and the Hague Convention, a parent who abducts and conceals children for more than one year will be rewarded for the misconduct by creating eligibility for an affirmative defense not otherwise available." *Id.* at 1363. On the other hand, courts rejecting equitable tolling have reasoned that there is nothing in the Convention or ICARA to suggest that the one-year period is a statute of limitations subject to tolling principles. *Anderson*, 250 F. Supp. 2d at 875. And furthermore, tolling the one-year period would defeat the purpose of the "well settled" affirmative defense, to "put some limit on the uprooting of a settled child." *Toren*, 26 F. Supp. 2d at 244.

**[11]** We agree with *Furnes* and hold that equitable principles may be applied to toll the one-year period when circumstances suggest that the abducting parent took steps to conceal the whereabouts of the child from the parent seeking return and such concealment delayed the filing of the petition for return. While we recognize the serious concerns with uprooting a child who is well settled regardless of whether the abducting parent hid the child, and that both the Convention and ICARA are silent on whether equitable tolling applies, we must give significant consideration to the overarching intention of the Convention—deterring child abduction. *See Young v. United States*, 535 U.S. 43, 49-50 (2002) ("It is hornbook law that limitations periods are customarily subject to equitable tolling unless tolling would be inconsistent with the text of the relevant statute. Congress must be presumed to draft limitations periods in light of this background principle.") (internal quotations and citations omitted).

Logic and equity dictate that awarding an abducting parent an affirmative defense if that parent hides the child from the parent seeking return would not only encourage child abductions, but also encourage hiding the child from the parent seeking return. *See Belay*, 272 F. Supp. 2d at 561 ("[C]ourts must be wary of rewarding an abductor for concealing the

whereabouts of a child long enough for the child to become 'well settled'; to reward the abductor as such would be to condone the exact behavior the Convention seeks to prevent."). Indeed, this concern was reflected in the State Department's public notice on the Hague Convention, which states, "If the alleged wrongdoer concealed the child's whereabouts from the custodian necessitating a long search for the child and thereby delayed the commencement of a return proceeding by the applicant, it is highly questionable whether the respondent should be permitted to benefit from such conduct absent strong countervailing considerations." Hague International Child Abduction Convention, 51 Fed. Reg. 10,494, 10,505 (Dep't of State March 26, 1986) (Pub. Notice).

[12] We therefore hold that equitable tolling is available under the Hague Convention and ICARA because applying equitable principles to toll the one-year filing period in circumstances where the abducting parent hides the child is consistent with the purpose of the Convention to deter child abduction.

## IV.

For the reasons stated above, the district court abused its discretion in denying Duarte's Rule 59(e) motion. We also hold that equitable tolling is available under the Hague Convention and ICARA to toll the one-year filing period. In so holding, we express no opinion on whether the one-year filing period should be tolled in this case. We leave that determination to the district court after conducting further proceedings and finalizing the record on this issue.

As we read the record, it appears that Duarte has not seen or visited her children for an extended period of time. Should Duarte seek temporary visitation rights pending final resolution of this case, we suggest that the district court take such action as may be appropriate.

**REVERSED** and **REMANDED**.

---

BEA, Circuit Judge. dissenting:

It always presents a sad case when children are removed from their mother.[1] It seems an even worse case when the mother has not had her day in court to testify why the children should be with her.

But here, in a federal court of appeals, it is still a legal case. A case must be decided by the rules of our law; we must apply the correct standard of review and we must remember the procedural posture of the case. With respect, the majority fails to do so.

The question in this case: Is a litigant deprived of due process by not being heard in court when she has already shown through her offer of proof she has no relevant evidence to present? Rather than look at whether the mother should have been given a hearing, the majority should have focused on whether the mother's motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) put forth any evidence that, had it been presented at the hearing, likely would have changed the hearing's result. Had the majority done that, it would have seen that the mother proved herself out of court: She offered to prove only such evidence as would have lost for her at the hearing she claims she was unjustly denied. Absent suffering any prejudice by the denial of a hearing, the judgment of the trial court should be affirmed. In today's argot: "No harm; no foul." *See* Fed. R. Civ. P. 61 (a judgment will not be set aside for harmless error). Accordingly, I must respectfully dissent.

---

[1]Though it is arguably less sad when the mother's boyfriend, and father of her latest child, stands accused of sexually molesting the children, and the mother fails to deny such charge.

I agree with the majority's holding regarding equitable tolling of the one-year period in which to commence actions to recover possession of children. Where the abductor hides the location of the children, and the parent or guardian does not know where to file a petition under the Hague Convention, the one-year period should not run.

But those are not the facts of this case. All the evidence offered to the district court by the father (Bardales) showed the mother (Duarte) knew perfectly well where the children were located—indeed, in the same house Duarte and Bardales had purchased in San Diego and in which they lived with the children until 2000 when Duarte took the children to Mexico. The children were in the same public schools which they had always attended.

I

Article 12 of the Hague Convention provides:

> Where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith.

> The judicial or administrative authority, even where the proceedings have been commenced after the expiration of the period of one year referred to in the preceding paragraph, shall also order the return of the child, *unless it is demonstrated that the child is now settled in [his] new environment.*

Hague Convention, art. 12 (emphasis added). The United States adopted the Hague Convention when it enacted the

International Child Abduction Remedies Act (ICARA). 42 U.S.C. §§ 11601-11610. Under ICARA, "commencement of proceedings," as used in article 12 of the Hague Convention, means the filing of a petition in "any *court* which has jurisdiction of such action and which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed." 42 U.S.C. § 11603(b) and (f) (emphasis added).

Duarte filed her petition for the return of her children in the San Diego Superior Court on June 2, 2005, almost two years after Bardales took the two youngest children from her on July 8, 2003. The majority's discussion of Duarte's previous efforts to commence an action is to no avail. Even Duarte does not contend her filing of a Hague Convention application with the Protection of Human Rights Department in Tijuana, Mexico on September 14, 2003, or the subsequent receipt of her application by the San Diego District Attorney's Office, commenced proceedings under article 12. The only case to address the issue holds that filing an application with an administrative authority, as opposed to filing a petition with a court of competent jurisdiction, does not commence proceedings under ICARA. *Wojcik v. Wojcik*, 959 F. Supp. 413, 418 (E.D. Mich. 1997).

Where, as here, an ICARA petition is not filed in a court of competent jurisdiction within one year of a child's wrongful removal, the respondent can raise the affirmative defense "that the child is now settled in [his] new environment" and thus any custody proceeding should take place in the venue where the children now live. Hague Convention art. 12; 42 U.S.C. § 11603. This is known as the "well-settled" exception or defense. The respondent must establish the children are well-settled by a preponderance of the evidence. 42 U.S.C. § 11603.

Thus, the merits of this case involve three questions: First, did Bardales wrongfully remove the children from Duarte's

custody? Yes; this is the "prima facie" case Duarte must prove, and Bardales concedes this first point.[2] If Duarte had filed her petition within one year after July 8, 2003—the day Bardales took the children—this would end our inquiry: The children would be returned to Duarte, and the parties would have to litigate the custody dispute in Mexico. *See* Hague Convention art. 12. Because Duarte did not file her petition until June 2, 2005, however, we proceed to the second question.

Did Bardales hide the whereabouts of the children such that Duarte did not know where to file her petition under the Hague Convention? If so, then equitable tolling applies and Duarte wins. If not, Bardales is entitled to show the children are well-settled in their new environment and we proceed to the third and final question. Are the children well-settled in San Diego?

Both parties in this case filed numerous declarations in response to the district court's order to show cause, and were given the opportunity to brief the issues of whether Bardales hid the children and whether the children are "well-settled" in San Diego. The district court, acting as the trier of fact, found Bardales did not attempt to hide the children's whereabouts from Duarte, and the children are well-settled in San Diego.

---

[2]Although Bardales concedes he removed the two youngest children from Duarte's custody, he asserts it was necessary for their safety. During 2001, Duarte and the children lived with Duarte's boyfriend, Oscar Nunes, and Nunes's son in Mexico. In March 2002, Bardales and Duarte's two oldest daughters came to stay with Bardales in San Diego. They told Bardales that Nunes sexually molested them and they overheard Nunes confess the abuse to Duarte. They have been treated by a psychologist since that time. Bardales believed Duarte still was living with Nunes in 2003 when this action was filed, and was pregnant with Nunes's child. According to Bardales, he took the two youngest children because he feared Nunes would sexually abuse them. Although Duarte claimed she no longer lived with Nunes, she has not denied that Nunes sexually abused the two oldest girls, nor that she had Nunes's child, which means Nunes may be in regular contact with Duarte and any children living with her.

The district court declined to give Duarte a hearing because Duarte's declarations affirmatively showed she had no personal knowledge regarding whether the children are well-settled in San Diego. Therefore, Duarte's presence at a hearing would be immaterial. The record contains ample evidence to support the district court's findings, set forth below.

## II

*The majority uses an incorrect standard for a Rule 59(e) motion based on new evidence.*

In evaluating the district court's rulings, the majority cites the general standard for granting a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), without delving further into the Rule's requirements.

Duarte's Rule 59(e) motion was based on a claim of newly discovered evidence. While it is true that newly discovered evidence is one basis for granting a Rule 59(e) motion, not just any evidence will do. To prevail on a Rule 59(e) motion because of newly discovered evidence, the movant must show the evidence (1) existed at the time of the trial or proceeding at which the ruling now protested was entered; (2) could not have been discovered through due diligence; and (3) was of such magnitude that production of it earlier would have been likely to change the disposition of the case. *Coastal Transfer Co. v. Toyota Motor Sales*, 833 F.2d 208, 211 (9th Cir. 1987); *see also* Fed. R. Civ. P. 61 (holding a judgment will not be set aside for harmless error).

Furthermore, we must remember our standard of review, which is not *de novo*. We are to review the denial of a motion to alter or amend a judgment under Rule 59(e) for abuse of discretion. *See Pasatiempo v. Aizawa*, 103 F.3d 796, 801 (9th Cir. 1996).

The new evidence Duarte presented was evidence that she could not obtain a certified report from the Mexican Transit

Authority showing she reported the theft of her handbag to them. The new evidence explained why Duarte could not produce the evidence required by the district court for the *continuance of the hearing*, but it did nothing to prove that, had she appeared, Duarte could have presented *evidence* that would have been likely to change the outcome of the case.

The district court acknowledged that Duarte's new evidence was sufficient to show she had reported the theft of her handbag. Nevertheless, the district court denied Duarte's motion to alter or amend the judgment. It did so because even if Duarte were given a hearing and proved her prima facie case—that Bardales wrongfully took the children from her and brought them to the United States—the district court *still* would have granted judgment for Bardales on the merits, because Bardales did not hide the children from Duarte, and the children are well-settled in their home with Bardales. Duarte's evidence that her purse was stolen had nothing to do with whether Bardales hid the children from her, nor with whether the children were well-settled. Therefore, it would not have "been likely to change the disposition of the case." *Coastal Transfer Co.*, 833 F.2d at 211. The majority fails to analyze this point. The majority, it seems, would require district courts to grant a Rule 59(e) motion whenever new evidence is presented, no matter how meaningless the evidence is to the end result of the case.

Not only does the majority apply the wrong standard of review, it also disregards crucial evidence in the record.

### III

*The district court had already given Duarte an opportunity to present evidence on the merits.*

The majority asserts the evidence in the record on the issue of equitable tolling was incomplete and the district court abused its discretion when it failed to give the parties a hear-

ing on this issue. *See* Maj. Op. at 5794-95. The record belies the majority's assertion.

On June 29, 2006, the district court issued an order to show cause "why equitable tolling should, or should not, apply from the date of the alleged wrongful retention" of the children. The court required both parties to present briefing and evidence on the only issue that was not conceded[3] in the case —whether Bardales hid the children from Duarte, ordering that:

> Plaintiff is directed to provide further details concerning Defendant's alleged 'secreting' of the four children, including Plaintiff's attempts at locating the children. Defendant is directed to provide the Court with specific information as to [the two oldest children's] whereabouts from January 1, 2003 until June 2, 2005, and [the two youngest children's] whereabouts from July 8, 2003 until June 2, 2005.

June 29, 2006 Order to Show Cause.

Duarte filed a 90-page response to the order to show cause that included various charts showing Duarte's attempts to find the children and fifteen declarations by people who helped Duarte in those attempts. As the majority notes, Duarte gave the court a list of witnesses and exhibits she intended to call at the hearing. Maj. Op. at 5794-95. Had Duarte provided only a list, we might not know what evidence those witnesses could proffer. But Duarte went further. She filed declarations from these witnesses stating the substance of their knowledge, and she presented an offer of proof in the form of a chart, that describes the substance of each witness's proposed testimony.

---

[3]Bardales conceded he wrongfully removed the children, and Duarte conceded she had no evidence as to whether the children were well-settled in San Diego. Thus, the only possible contested issue in the case was whether Bardales hid the children from Duarte, thus preventing her from knowing where to file her petition.

Glaringly absent from any of these declarations or descriptions is a statement that anyone looked for the children at the home which was purchased by Duarte and Bardales, and where Duarte, Bardales and their children lived together for years in San Diego, and where Bardales and the children still reside. Nor is there any evidence that anyone checked with the local public schools. Additionally, Duarte *conceded* she had no evidence regarding whether the children are well-settled in San Diego.

In contrast, Bardales filed seventeen affidavits in support of his response to the order to show cause. These declarations were from: a family member who lives in San Diego; Bardales's new wife; teachers of all four children along with school records showing the children consistently were enrolled in the local public schools near the home Duarte shared with Bardales; friends of the family; Bardales's employer; a neighbor; the family doctor; the children's psychiatrist; and a declaration from the San Diego Deputy District Attorney that its investigator was able to verify Bardales's current address as the home he and Duarte purchased. Bardales's evidence establishes the following:

*Evidence Bardales Did Not Hide the Children*

Duarte should have known exactly where to find Bardales and the children. In 1990, Duarte and Bardales moved from Mexico to San Diego, where they purchased a home together. They lived at that address in San Diego for several years, during which time they had their four children. As of the date of the district court hearing, Bardales and the children were still living in this same home in San Diego.

Furthermore, Duarte was personally served on July 9, 2003 with the San Diego Superior Court order that granted custody of the children to Bardales and granted a temporary restraining order against Duarte. Duarte also was served with Bardales's petition to be awarded custody of the children, and his

*ex parte* application for a temporary restraining order. That petition listed Bardales's attorney's address. Duarte could have served Bardales's attorney with her petition for the return of the children, and the San Diego Superior Court would have had jurisdiction to decide the merits of Duarte's petition.

In its order denying the motion to alter or amend the judgment, the district court denied Duarte the benefit of equitable tolling based, in part, on the fact that Bardales's petition gave Duarte actual notice of the whereabouts of the children as of July 9, 2003. Because Duarte first filed her petition in the San Diego Superior Court, California law controls the service of process. Under California law, service of process or pleading upon a party's attorney is valid to effect service on the party the attorney represents. *See Reynolds v. Reynolds*, 134 P.2d 251, 21 Cal.2d 580, 584 (1943) ("service of papers on the attorney of record, where service upon the attorney is proper, binds the client until the attorney is discharged or substituted out of the case in the manner provided by law"). Because Duarte had Bardales's attorney's address at all times, she did not need Bardales's address.

Bardales's petition for custody of the children also alleged that the San Diego Superior Court had jurisdiction to determine the custody dispute. Because Bardales filed his petition for custody in the San Diego Superior Court, that court already had personal jurisdiction over Bardales to adjudicate the custody of the children. Thus, Duarte knew exactly which court would have jurisdiction to adjudicate her claims. *See* Cal. Code Civ. Proc. § 410.50(b) ("Jurisdiction of the court over the parties and the subject matter of an action continues throughout subsequent proceedings in the action.").

Not only were Bardales and the children living in the same house, but the children were enrolled at all times in the local public schools near their house, and attended the local Catholic Cathedral.

Finally, Duarte conceded she spoke to the children on the telephone by calling the house in San Diego from the date of service, July 9, 2003 up until September 23, 2003, when Bardales changed his number. Duarte also telephoned the two oldest children at their house in San Diego from the time they came to live with Bardales in 2001. Duarte does not contend she did not know the location of the two youngest children from July 8, 2003 until September 23, 2003, nor does she explain why she did not file her petition before September 23, 2003. This evidence is more than enough to support the district court's finding that Bardales did not hide the children from Duarte, and thus she is not entitled to equitable tolling of the one year time period to file the petition.

*Evidence the children are well-settled in San Diego*

The district court found the children are well-settled in their new home with Bardales, and *Duarte does not dispute this finding*. Although the district court did not give Duarte a hearing on the issue whether the children are well-settled, she does not raise this issue on appeal, and has waived it. *All Pacific Trading, Inc. v. Vessel M/V Hanjin Yosu*, 7 F.3d 1427, 1434 (9th Cir. 1993). Further, Duarte never asserts that if she were granted a hearing, she would have any relevant evidence to present on this issue. Furthermore, there was sufficient evidence in the record to support the district court's finding the children are well-settled in San Diego.

To determine whether a child is settled in his new environment, a court may consider any factor relevant to a child's connection to his living environment. These factors generally include: (1) the age of the child; (2) the stability of the child's residence in the new environment; (3) whether the child attends school or day care consistently; (4) whether the child attends church regularly; (5) the respondent's employment and financial stability; (6) whether the child has friends and relatives in the new area; and (7) the immigration status of the child and the respondent. *Lops v. Lops*, 140 F.3d 927, 945-46

(11th Cir. 1998); *Koc v. Koc*, 181 F. Supp. 2d 136, 152-54 (E.D.N.Y. 2001).

The two youngest children have lived in San Diego for a majority of their lives. The family has lived in the same house, and the children have attended the same schools the entire time, allowing them to build friendships. The two youngest children have done well in school, as have their older sisters, and their grades have steadily improved each year.

The children have regular contact with extended family, including aunts, uncles, cousins, and their paternal grandparents who live with them. The two youngest children are close to their older sisters, who are themselves settled in San Diego and who are staying in San Diego because Duarte voluntarily dismissed her petition as to these two children.

Bardales is financially stable; he has held the same job since April 2002 and received a good recommendation from his manager. Bardales and his children all attend the local Catholic Cathedral. Medical records demonstrate the children received regular vaccinations and medical care. The children are all U.S. citizens, and Bardales is a legal permanent resident. Finally, the San Diego Superior Court's custody order awarded sole custody to Bardales.

The majority overlooks the filings by the parties in response to the district court's order to show cause. Duarte did not set forth any further evidence she would be able to produce at a hearing on the sole relevant issues: (1) equitable tolling and (2) whether the children are well-settled. As the district court found, Bardales did not hide the children from Duarte; they were living at the same house where the family had always lived. Nor was there any showing either Duarte or any of her witnesses have proffered any evidence on the issue whether the children are well-settled in San Diego. Thus, any further hearing will be a waste of everyone's time and money. The district court did not abuse its discretion in failing to con-

duct a hearing at which no further relevant evidence would be presented. The district court already had all the relevant evidence before it that the parties had to offer.

Finally, the majority implies the district court might have the power to set aside the state court's custody order and allow Duarte to visit the children. Federal courts do not have jurisdiction to overrule state custody orders. For the district court to attempt to overrule the state court's custody order would raise issues under claim and issue preclusion, not to mention the full faith and credit clause, 28 U.S.C. § 1738.[4] Duarte's remedy lies in the California Court of Appeal, not the federal district court, if she wants the custody order modified.

Because it cannot be said that the district court abused its discretion in denying Duarte a hearing, I respectfully dissent.

---

[4]Under 28 U.S.C. § 1738, "[f]ederal courts must give the same preclusive effect to state court judgments that those judgments would be given in that state's own courts." *Clements v. Airport Auth. of Washoe County*, 69 F.3d 321, 326 (9th Cir. 1995); *see also Allen v. McCurry*, 449 U.S. 90, 96 (1980) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so").